## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| David Kinder, Tracy Scott, Elbert Peay, Cherry Crawford, and Ross Sodahl, individually and as representatives of a class of similarly situated persons, and on behalf of the Georgia-Pacific LLC Hourly 401(k) Plan, the Georgia-Pacific LLC 401(k) Retirement Savings Plan, the Koch Industries Inc. Employees' Savings Plan, and the Flint Hills Resources Chemicals Salary Deferral Plan, | Case No. 1:20-cv-02973-MHC **SECOND AMENDED COMPLAINT** **CLASS ACTION** |
| Plaintiffs, | |
| v. | |
| Koch Industries, Inc., Koch Business Solutions, LP, the Koch Benefits Administrative Committee, and John Does 1-30, | |

## NATURE OF THE ACTION

1.     Plaintiffs David Kinder, Tracy Scott, Elbert Peay, Cherry Crawford, and Ross Sodahl, individually and as representatives of the Class described herein, bring this action under the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001, *et seq.* ("ERISA"), against Defendants Koch Industries, Inc. ("Koch Industries"), Koch Business Solutions, LP ("Koch Business Solutions"), the Koch Benefits Administrative Committee ("Committee"), and John Does 1-30 (collectively, "Defendants"). As described herein, Defendants have

1

breached their fiduciary duties with respect certain Koch-affiliated defined contribution plans ("Plans")[1] in violation of ERISA, to the detriment of the Plans and their participants and beneficiaries. Plaintiffs bring this action to remedy this unlawful conduct and obtain appropriate monetary and equitable relief as provided by ERISA.

## PRELIMINARY STATEMENT

2.     As of June 2020, Americans had approximately $7.9 trillion in assets invested in defined contribution plans, such as 401(k) and 403(b) plans.[2] Defined contribution plans have largely replaced defined benefit plans—or pension plans—that were predominant in previous generations.[3] Only around 8% of non-union U.S. workers in the private sector participate in a defined benefit plan.[4] By contrast, approximately 47% of non-union U.S. workers in the private sector participate in a

---

[1] The Koch-affiliated Plans at issue are the Georgia-Pacific LLC Hourly 401(k) Plan ("Georgia-Pacific Hourly Plan"), the Georgia-Pacific LLC 401(k) Retirement Savings Plan ("Georgia-Pacific Savings Plan"), the Koch Industries Inc. Employees' Savings Plan ("Koch Plan"), and the Flint Hills Resources Chemicals Salary Deferral Plan ("Flint Hills Plan").

[2] *See* Investment Company Institute, *Retirement Assets Total $28.7 Trillion in First Quarter 2020* (June 17, 2020), *available at* https://ici.org/research/stats/retirement/ret_20_q1.

[3] *See* Bankrate, *Pensions Decline as 401(k) Plans Multiply* (July 24, 2014), *available at* http://www.bankrate.com/finance/retirement/pensions-decline-as-401-k-plans-multiply-1.aspx.

[4] *See* Congressional Research Service, *Worker Participation in Employer-Sponsored Pensions: A Fact Sheet*, at 4 (Apr. 30, 2019) *available at* https://fas.org/sgp/crs/misc/R43439.pdf.

defined contribution plan.[5]

3.     The potential for disloyalty and imprudence is much greater in defined contribution plans than in defined benefit plans. In a defined benefit plan, the participant is entitled to a fixed monthly pension payment, while the employer is responsible for making sure the plan is sufficiently capitalized, and thus the employer bears all risks related to excessive fees. *See Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 439 (1999). Therefore, in a defined benefit plan, the employer and the plan's fiduciaries have every incentive to keep costs low and to remove imprudent investments. But in a defined contribution plan, participants' benefits "are limited to the value of their own investment accounts, which is determined by the market performance of employee and employer contributions, less expenses." *Tibble v. Edison Int'l*, 135 S. Ct. 1823, 1826 (2015). Thus, the employer has no incentive to keep costs low because all risks related to high fees are typically borne by the participating employees.

4.     To safeguard retirement plan participants, ERISA imposes strict fiduciary duties of loyalty and prudence upon employers and other plan fiduciaries. 29 U.S.C. § 1104(a)(1). These twin fiduciary duties are the "highest known to law." *Pledger v. Reliance Tr. Co.*, 240 F. Supp. 3d 1314, 1321 (N.D. Ga. 2017) (quoting *ITPE Pension Fund v. Hall*, 334 F.3d 1011, 1013 (11th Cir. 2003)). Fiduciaries

---

[5] *See id.*

must act "solely in the interest of the participants and beneficiaries," 29 U.S.C. § 1104(a)(1)(A), and exercise appropriate "care, skill, prudence, and diligence." 29 U.S.C. § 1104(a)(1)(B). This includes an obligation to ensure that the expenses of administering the plan are reasonable. *See* 29 U.S.C. § 1104(a)(1)(A)(ii).

5.      Contrary to these fiduciary duties, Defendants failed to prudently and loyally monitor and control the Plans' recordkeeping expenses, and instead allowed the Plans to pay up to ***six times*** more than what similarly-sized plans would have paid for such services. Defendants' ERISA violations have resulted in millions of dollars in excessive fees to the Plans and their participants since the beginning of the statutory period.

6.      Based on the conduct described herein, Plaintiffs assert claims against Defendants under ERISA for breaches of the fiduciary duties of loyalty and prudence (Count One), and against Koch Industries for failure to monitor fiduciaries (Count Two). In connection with these claims, Plaintiffs seek to recover all losses to the Plans resulting from Defendants' fiduciary breaches and other appropriate relief.

## JURISDICTION AND VENUE

7.      Plaintiffs bring this action pursuant to 29 U.S.C. § 1132(a)(2) and (3), which provide that participants in an employee retirement plan may pursue a civil action on behalf of the plan to remedy breaches of fiduciary duties and other

prohibited conduct, and to obtain monetary and appropriate equitable relief as set forth in 29 U.S.C. § 1109.

8.     This case presents a federal question under ERISA, and therefore this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e)(1).

9.     Venue is proper pursuant to 29 U.S.C. § 1132(e)(2) and 28 U.S.C. § 1391(b) because this is the district where the Georgia-Pacific Hourly Plan and Georgia-Pacific Savings Plan are administered, where Defendant Koch Business Solutions resides (according to the 5500s for these two plans), and where a substantial part of the events or omissions giving rise to the claims occurred.

## THE PARTIES

### PLAINTIFFS

10.   Plaintiff David Kinder resides in Arkadelphia, Arkansas. Plaintiff Kinder has participated in the Georgia-Pacific Hourly Plan since 1996, and is a current participant in that plan. As a plan participant, his account has been

recordkept by Alight Financial Solutions, LLC ("Alight")[6] during the class period.[7] Plaintiff Kinder has been financially injured by Defendants' unlawful conduct, and his account would be worth more today if Defendants had not violated ERISA as described herein.

11.    Plaintiff Tracy Scott resides in Arkadelphia, Arkansas, and was a participant in the Georgia-Pacific Hourly Plan from approximately 2007 until 2016. As a plan participant, his account was recordkept by Alight during the class period. Plaintiff Scott has been financially injured by Defendants' unlawful conduct, and his account would have been worth more at the time it was distributed if Defendants had not violated ERISA as described herein.

12.    Plaintiff Elbert Peay resides in Pickerington, Ohio, and was a participant in the Georgia-Pacific Salary Plan from approximately 1991 until 2019. As a plan participant, his account was recordkept by Alight during the class period. Plaintiff Peay has been financially injured by Defendants' unlawful conduct, and

---

[6] Alight is the legacy provider of certain human resources outsourcing services, including 401(k) administrative services, originally developed by Hewitt Associates. Hewitt was acquired by Aon in 2010, and Aon spun off recordkeeping and other Hewitt service lines into Alight in 2017. After the spinoff, Alight is a private company no longer affiliated with Aon. As used herein, "Alight" refers to both the current company and its predecessors.

[7] The class period is limited to the period on or after July 16, 2014, *see infra* at ¶ 56, pursuant to ERISA's six-year statute of limitations, *see* 29 U.S.C. § 1113(1).

his account would have been worth more at the time it was distributed if Defendants had not violated ERISA as described herein.

13.    Plaintiff Cherry Crawford resides in Wichita, Kansas. Plaintiff Crawford has participated in the Koch Plan since 2015, and is a current participant in that plan. As a plan participant, her account was recordkept by Alight during the class period. Plaintiff Crawford has been financially injured by Defendants' unlawful conduct, and her account would be worth more today if Defendants had not violated ERISA as described herein.

14.    Plaintiff Ross Sodahl resides in Chaska, Minnesota, and was a participant in the Flint Hills Plan from approximately 2012 until 2019. As a plan participant, his account was recordkept by Alight during the class period. Plaintiff Sodahl has been financially injured by Defendants' unlawful conduct, and his account would have been worth more at the time it was distributed if Defendants had not violated ERISA as described herein.

### THE PLANS IN THE MASTER TRUST

15.    The Koch Companies Defined Contribution Master Trust ("Master Trust") is the single master trust governing several retirement plans for employees of Koch affiliated companies, including the Georgia-Pacific Hourly Plan,[8] the

---

[8] The Georgia-Pacific Hourly Plan covers eligible hourly paid employees or former employees of Georgia-Pacific LLC ("Georgia-Pacific") or its affiliates. Georgia-Pacific is a wholly-owned subsidiary of Koch Industries.

Georgia-Pacific Savings Plan,[9] the Koch Plan,[10] and the Flint Hills Plan.[11]

16.    The Plans are "employee pension benefit plan[s]" within the meaning of 29 U.S.C. § 1002(2)(A) and "defined contribution plan[s]" within the meaning of 29 U.S.C. § 1002(34). The Plans are qualified plans under 26 U.S.C. § 401, commonly referred to as "401(k) plan[s]."

17.    "[A] master trust is a trust for which a regulated financial institution serves as trustee or custodian (regardless of whether such institution exercises discretionary authority or control respecting the management of assets held in the trust) and in which assets of more than one plan sponsored by a single employer or by a group of employers under common control are held." 29 C.F.R. § 2520.103-1(e).

18.    "The use of master trusts by large employers is commonplace…. The single administrative device simplifies the conduct of multiple plans, prevents

---

[9] The Georgia-Pacific Savings Plan covers eligible employees and former employees of Georgia-Pacific or its affiliates. As noted above, Georgia-Pacific is a wholly-owned subsidiary of Koch Industries.

[10] The Koch Plan covers eligible employees or former employees of Koch Industries or other companies affiliated with Koch Industries.

[11] The Flint Hills Plan covers certain groups of union employees or former employees of Flint Hills Resources, LLC ("Flint Hills Resources"). Flint Hills Resources is a wholly-owned subsidiary of Koch Industries.

duplication of effort and expense, and creates economies of scale."[12]

19.    The Plans have all participated in the Master Trust since at least 2009.

20.    With the exception of assets held in certain self-directed brokerage accounts and common collective trust funds, the Plans hold all of their investment assets in the Master Trust.

21.    The Plans participating in the Master Trust are managed together. The Master Trust gives common access to the same investment options and services for all the Plans. The Plans' participants may direct their accounts to one or more of the investment vehicles selected by Defendants within the Master Trust's investment menu.

22.    From the beginning of 2014 until the end of 2018, the Plans have had between approximately 53,000 and 60,000 participants, and the Master Trust has had between $6.5 billion and $8.1 billion in assets.

**DEFENDANTS**

*Koch Industries, Inc.*

23.    Koch Industries is a private company headquartered in Wichita,

---

[12] United States Securities and Exchange Commission ("SEC") Docket Volume 51, No. 18 at 1499 (July 28, 1992), *available at* https://books.google.com/books?id=1aiCkO3RGBUC&pg=PA1499&lpg=PA1499 &dq=master+trust+economies+of+scale.&source=bl&ots=Pt2PXa5srK&sig=ACf U3U0eEHXbZDhSc3O8Z5j4qgfvMP58FA&hl=en&sa=X&ved=2ahUKEwiw_cnP kqrqAhXNB80KHfN9AiMQ6AEwEnoECAgQAQ#v=onepage&q=master%20trus t%20economies%20of%20scale.&f=false.

Kansas.

24.    Koch Industries is identified as the plan sponsor and plan administrator in the Master Trust's Form 5500s filed with the DOL. Koch Industries has ultimate decision-making authority with respect to the Master Trust and the management and administration of the Master Trust and the Master Trust's investments. Further, since all of the Plans are managed together and have the same investment options through the Master Trust, Koch Industries has decision-making authority with respect to the Plans, the management and administration of the Plans, and the Plans' investments. Because Koch Industries exercises discretionary authority or discretionary control with respect to management and administration of the Master Trust and Plans, and with respect to disposition of the assets of the Master Trust and Plans, it is a functional fiduciary under 29 U.S.C. § 1002(21)(A).

25.    To the extent that Koch Industries has delegated any of its fiduciary functions to others, such as the Committee or Koch Business Solutions, it maintained fiduciary responsibilities with respect to the Plans and the Master Trust. It is well-accepted that the authority to appoint, retain, and remove other fiduciaries constitutes discretionary authority or control over the management or administration of a plan or trust, and thus confers fiduciary status under 29 U.S.C. § 1002(21)(A). *See* 29 C.F.R. § 2509.75-8 (D-4); *Coyne & Delany Co. v. Selman*, 98 F.3d 1457, 1465 (4th Cir. 1996) ("[T]he power … to appoint, retain and remove

plan fiduciaries constitutes 'discretionary authority' over the management or administration of a plan within the meaning of § 1002(21)(A).") Further, the responsibility for appointing and removing other fiduciaries carries with it an accompanying duty to monitor the appointed fiduciaries, and to ensure that they are complying with ERISA's fiduciary standards. *See* 29 C.F.R. § 2509.75-8 (FR-17); *Coyne*, 98 F.3d at 1465 (The power to appoint and remove plan fiduciaries "carries with it a duty to monitor appropriately those subject to removal.") (quotation omitted).

26.     Koch Industries possessed the ability to delegate its fiduciary responsibilities to any other person, persons, or entity. Any individuals or entities not named in this Complaint to whom Koch Industries delegated fiduciary functions or responsibilities are also fiduciaries of the Plans under 29 U.S.C. §§ 1002(21)(A) and 1105(c)(2). Because any such individuals or entities that have been delegated fiduciary responsibilities are not currently known to Plaintiffs, they are collectively named in this Complaint as John Does 1-10.

### Koch Business Solutions, LP

27.     Koch Business Solutions is an information technology services company located in Atlanta, Georgia. Koch Business Solutions offers finance, human resources, facilities, real estate, and other technology support to various businesses including Koch Industries and Georgia-Pacific (collectively, the

"Companies").

28.   The Plans' Form 5500 filings direct plan sponsor and plan administrator communications to Koch Business Solutions.

29.   The Companies have delegated the Plans' fiduciary administrative functions to Koch Business Solutions. Because Koch Business Solutions exercises discretionary authority or discretionary control with respect to management and administration of the Plans, it is a functional fiduciary under 29 U.S.C. § 1002(21)(A).

### Koch Benefits Administrative Committee

30.   The Koch Benefits Administrative Committee is a committee designated to assist Koch Industries with administration of the Plans. The Committee has the duty to select, monitor, evaluate, and modify the Plans' investments, subject to the ultimate oversight and discretion of Koch Industries. In performance of its duties, the Committee exercises "authority or control respecting management or disposition" of the Plans' assets and has "discretionary authority or discretionary responsibility in the administration" of the Plans, and is therefore a fiduciary under 29 U.S.C. § 1002(21)(A).

31.   Each of the Committee members are also fiduciaries under 29 U.S.C. § 1002(21)(A). Because the names of the individual members of the Committee during the class period are currently unknown to Plaintiffs, they are collectively

named in this Complaint as John Does 11-30.

32.   Each Defendant identified above as a fiduciary of the Plans is also subject to co-fiduciary liability under 29 U.S.C. § 1105(a)(1)–(3) because it participated in the other fiduciaries' breaches, enabled other fiduciaries to breach their fiduciary duties, and/or failed to remedy other fiduciaries' breaches of their duties, despite having knowledge of the breaches. *See Woods v. S. Co.*, 396 F. Supp. 2d 1351, 1378-79 (N.D. Ga. 2005) ("ERISA § 405(a) provides that a fiduciary can be liable for another fiduciary's breach in circumstances where (1) he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach; (2) by his failure to comply with § 404(a) in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or (3) he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.") (quotations omitted).

## ERISA FIDUCIARY DUTIES

33.   ERISA imposes strict fiduciary duties of loyalty and prudence upon fiduciaries of retirement plans. 29 U.S.C. § 1104(a)(1) states, in relevant part:

> [A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—
>
> (A)    for the exclusive purpose of

> (i)     providing benefits to participants and their beneficiaries;

and

> (ii)    defraying reasonable expenses of administering the plan;

> (B)    with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims . . . .

34.    These ERISA fiduciary duties are "the highest known to law." *Pledger*, 240 F. Supp. 3d at 1321 (quoting *ITPE Pension Fund*, 334 F.3d at 1013). A fiduciary's conduct "must bear the marks of loyalty, skill, and diligence expected of an expert in the field. It is not enough to avoid misconduct, kickback schemes, and bad-faith dealings. The law expects more than good intentions. A pure heart and an empty head are not enough." *Sweda v. Univ. of Pennsylvania*, 923 F.3d 320, 329 (3d Cir. 2019) (quotation omitted).

## DUTY OF LOYALTY

35.    The duty of loyalty requires fiduciaries to act with "an eye single" to the interests of plan participants. *Pegram v. Herdrich*, 530 U.S. 211, 235 (2000). "Perhaps the most fundamental duty of a [fiduciary] is that he [or she] must display . . . complete loyalty to the interests of the beneficiary and must exclude all selfish interest and all consideration of the interests of third persons." *Id.* at 224 (quoting G Bogert et al., *Law of Trusts and Trustees* § 543 (rev. 2d ed. 1980)). "There is no balancing of interests; ERISA commands undivided loyalty to the plan

participants." *Karpik v. Huntington Bancshares Inc.*, 2019 WL 7482134, at *4 (S.D. Ohio Sept. 26, 2019) (quoting *Bedrick by & Through Humrickhouse v. Travelers Ins. Co.*, 93 F.3d 149, 154 (4th Cir. 1996)).

## DUTY OF PRUDENCE

36.    ERISA also "imposes a 'prudent person' standard by which to measure fiduciaries' investment decisions and disposition of assets." *Fifth Third Bancorp v. Dudenhoeffer*, 134 S. Ct. 2459, 2467 (2014) (quotation omitted). "[A] fiduciary's conduct at all times must be reasonably supported in concept and must be implemented with proper care, skill, and caution." *Sweda*, 923 F.3d at 333 (quotation omitted). "[I]f there is indeed a 'hallmark' of fiduciary activity identified in the statute, it is prudence." *Id.*

## DUTY TO MINIMIZE COSTS

37.    At retirement, employees' benefits "are limited to the value of their own individual investment accounts, which is determined by the market performance of employee and employer contributions, less expenses." *Tibble*, 135 S. Ct. at 1826. "Expenses, such as management or administrative fees, can sometimes significantly reduce the value of an account in a defined-contribution plan, by decreasing its immediate value, and by depriving the participant of the prospective value of funds that would have continued to grow if not taken out in fees." *Sweda*, 923 F.3d at 328

(quotation omitted).[13]

38.    Administrative services such as recordkeeping, trustee, and custodial services are necessary for the operation of any defined contribution plan and are one of the plan's largest expenses. To protect retirement plan participants, ERISA requires the fiduciaries of such plans to monitor administrative expenses and ensure that they are reasonable. *See* 29 U.S.C. § 1104(a)(1)(A)(ii) ("[A] fiduciary shall discharge his duties … solely in the interest of participants … for the exclusive purpose of[] providing benefits … and defraying reasonable expenses of administering the plan[.]"); *Sweda*, 923 F.3d 3at 328 ("Fiduciaries must … understand and monitor plan expenses."); *accord* Restatement (Third) of Trusts § 88, cmt. a (2007) ("Implicit in a trustee's fiduciary duties is a duty to be cost conscious.").[14]

39.    Given the significant variation in total plan costs attributable to plan

---

[13] The DOL and SEC have warned that although the fees and costs associated with investment products and services may seem small, over time they can have a significant impact on an investor's portfolio. *See* DOL, *A Look at 401(k) Plan Fees*, at 1-2 (2013), *available at* https://www.dol.gov/sites/dolgov/files/ebsa/about-ebsa/our-activities/resource-center/publications/a-look-at-401k-plan-fees.pdf (cautioning that 1% difference annually can reduce the investor's account balance at retirement by 28%); SEC Investor Bulletin, *How Fees and Expenses Affect Your Investment Portfolio*, at 1, 3 (2014), *available at* https://www.sec.gov/investor/alerts/ib_fees_expenses.pdf.

[14] The legal construction of an ERISA fiduciary's duties is "derived from the common law of trusts." *Tibble*, 135 S. Ct. at 1828 (citation and internal quotation marks omitted). Therefore "[i]n determining the contours of an ERISA fiduciary's duty, courts often must look to the law of trusts." *Id.*

size, the reasonableness of administrative expenses, including recordkeeping fees, should be determined by comparisons to other similarly-sized plans. *See* 29 U.S.C. § 1104(a)(1)(B) (requiring ERISA fiduciaries to discharge their duties in the manner "that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character"); *Tussey v. ABB, Inc.*, 2007 WL 4289694, at *6, n.5 (W.D. Mo. Dec. 3, 2007) (Plaintiffs sufficiently alleged that administrative expenses were unreasonable through comparisons to similar plans because "[a]t most, reasonable compensation should mean compensation commensurate with that paid by similar plans for similar services to unaffiliated third parties.") (quoting Nell Hennessy, *Follow the Money: ERISA Plan Investments in Mutual Funds and Insurance*, 38 J. Marshall L. Rev. 867, 877 (2005)).

40.    A fiduciary may breach its fiduciary duty by authorizing higher-than-market recordkeeping fees or by maintaining a recordkeeping deal for its own benefit or that of a related party. *See Tussey v. ABB, Inc.*, 746 F.3d 327, 336 (8th Cir. 2014) (affirming judgment against plan sponsor based on "overpaying" recordkeeper and benefiting from the overpayment); *George v. Kraft Foods Glob., Inc.*, 641 F.3d 786, 799 (7th Cir. 2011) (failure to solicit bids, and higher-than-market recordkeeping fees, supported triable fiduciary breach claim); *see also Pledger*, 240 F. Supp. 3d at 1330 ("If a fiduciary charges record keeping fees …, it

can be a breach of its fiduciary duty to fail to monitor fees and rein in excessive compensation."); *Henderson v. Emory Univ.*, 252 F. Supp. 3d 1344, 1353 (N.D. Ga. 2017) ("The defendants can be held accountable for failing to monitor and making sure that the recordkeepers charged appropriate fees and did not receive overpayments for their services.").

## DEFENDANTS' VIOLATIONS OF ERISA

### I.  DEFENDANTS FAILED TO PROPERLY MONITOR OR CONTROL THE PLANS' RECORDKEEPING EXPENSES.

41.   Defendants, through the Master Trust, caused the Plans' participants to pay excessive recordkeeping expenses during the class period.

42.   Among larger plans, the market for recordkeeping services is highly competitive, with many recordkeepers equally capable of providing a high-level service. Accordingly, recordkeepers vigorously compete for business by offering the best price. As a result of such competition, recordkeeping fees have declined in defined contribution plans over time. Between 2006 and 2016, recordkeeping costs in the marketplace dropped by approximately 50% on a per-participant basis.[15]

43.   Typically, recordkeepers charge for recordkeeping services either on a

---

[15] *See* Greg Iacurci, *Adjusting to the Squeeze of Fee Compression*, Investment News (Nov. 9, 2019) *available at* https://www.investmentnews.com/adjusting-to-the-squeeze-of-fee-compression-170635 ("Median fees for record-keeping, trust and custody services for DC plans fell by about half in the decade through 2017, according to most recent figures published by consulting firm NEPC.").

per-participant fee basis (a fee based on the number of participants in the plan) or as an asset-based fee (a fee based on a percentage of the total assets in the plan).[16] Regardless of how these fees are charged, the cost of these services is typically borne by the plan participants. Accordingly, it is important for plan fiduciaries to closely monitor these expenses to ensure that participants are not being overcharged. *See* DOL Advisory Op. 2013-03A, 2013 WL 3546834, at 4 (July 3, 2013) (noting that fiduciaries must obtain information regarding "all fees or compensation received by" a recordkeeper – "including any revenue sharing" – and assess whether that amount is reasonable for the services provided).

44.    The cost of providing recordkeeping services depends on the number of participants in a plan. Plans with large numbers of participants can take advantage of economies of scale by negotiating lower per-participant recordkeeping fees. Similarly, plans with smaller numbers of participants can take advantage of economies of scale (and negotiate lower per-participant recordkeeping fees) through collective participation in a master trust.

45.    As noted above, the Plans have had between 53,000 and 60,000 participants, and the Master Trust has had between $6.5 billion and $8.1 billion in assets during the class period. Accordingly, the Plans, through the Master Trust,

---

[16] Asset-based fee arrangements are more common for smaller defined contribution plans, which have less leverage to negotiate how services are charged.

have significant leverage to negotiate recordkeeping expenses.

46.   Defendants, through the Master Trust, have caused the Plans to purchase recordkeeping services from Alight. Alight has been the recordkeeper for the Plans since 2009. The fees incurred for recordkeeping services are allocated between the Plans based upon each plan's proportionate share of the assets in the Master Trust.

47.   Koch Industries has a close relationship with Alight. In addition to acting as the recordkeeper for the Plans, Alight has also administered the Koch Industries Employees' Pension Plan since 2009[17] and administers Koch Industries' online benefits portal through which all employee benefits are managed, among other things.[18] Unlike the defined contribution Plans at issue, where recordkeeping expenses are paid out of participants' assets, the costs of providing these pension plan and benefits services are the responsibility of Koch Industries.

48.   Based on the Plans' filings with the DOL, the recordkeeping fees for the Plans were at least $58-146 per participant in 2014; $72-95 per participant in 2015; $64-84 per participant in 2016; $59-83 per participant in 2017; and $53-86

---

[17] Similarly, Alight administers the Georgia-Pacific LLC Hourly Pension Plan, the Georgia-Pacific LLC Salaried Pension Plan, and the Flint Hills Resources Group Benefit Plan.
[18] Koch Industries Online MyLifeChoices Benefits Portal, *available at* https://leplb0600.portal.hewitt.com/web/koch/#/routing (last visited July 14, 2020).

per participant in 2018.[19] Based on Plaintiffs' investigation, a prudent and loyal fiduciary of a similarly-sized plan could have obtained comparable recordkeeping services of like quality for as low as $14 per participant during that same time period. *See Moitoso v. FMR LLC*, 2020 WL 1495938, at *15 (D. Mass. Mar. 27, 2020).

49.   A prudent fiduciary would have closely monitored the Plans' recordkeeping expenses and engaged in a rigorous benchmarking analysis, either on its own or by working with an independent consultant, and would have discovered that the Plans were paying far too much for recordkeeping. Alternatively, the Plans could have performed a request for proposal ("RFP") and discovered that other recordkeepers would have provided the same services at lower cost. These savings could have been realized through a lower per-participant monthly charge.

50.   The Plans' excessive recordkeeping expenses demonstrate that Defendants either failed to engage in prudent monitoring of the Plans'

---

[19] This is based on the information currently available to Plaintiffs. These calculations are likely conservative as they only account for the direct compensation paid to Alight, and do not account for indirect compensation such as revenue sharing. Form 5500s filed by the Plans with the DOL provide that, "Certain fees incurred by the Plan are included in net investment gain (loss) from Plan's interest in the Companies Defined Contribution Master Trust, ***as they are paid through revenue sharing, rather than direct payment***." (emphasis added). Discovery will show how much additional revenue participants paid for recordkeeping through revenue sharing.

recordkeeping expenses and engage in prudent practices to keep recordkeeping expenses at competitive levels, or that Defendants allowed participants to be charged excessive recordkeeping fees in exchange for discounts on the other services Alight was providing that Koch Industries itself should have been paying for. Either way, the process by which Defendants managed the Plans' recordkeeping services "would have been tainted by failure of effort, competence, or loyalty," each of which constitutes a "breach of fiduciary duty." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 596 (8th Cir. 2009); *see also Henderson*, 252 F. Supp. 3d at 1353 (holding that plaintiffs' allegations that defendants caused the plan to pay more than a reasonable fee for recordkeeping services and failed to engage in a competitive bidding process supported a breach of fiduciary duty claim). Defendants' failure to monitor or control the Plans' recordkeeping expenses cost the Plans' participants millions of dollars during the class period.

## II. PLAINTIFFS LACKED KNOWLEDGE OF DEFENDANTS' CONDUCT AND OTHER MATERIAL FACTS.

51.   Plaintiffs did not have knowledge of all material facts (including, among other things, the cost of the Plans' recordkeeping services compared to similarly-sized plans and the Plans' leverage to negotiate lower recordkeeping expenses) necessary to understand that Defendants breached their fiduciary duties and engaged in other unlawful conduct in violation of ERISA, until shortly before this suit was filed. Further, Plaintiffs did not have actual knowledge of the specifics

of Defendants' decision-making processes with respect to the Plans (including Defendants' process for selecting and monitoring the Plans' recordkeeper and monitoring the Plans' expenses) because this information is solely within the possession of Defendants prior to discovery. For purposes of this Complaint, Plaintiffs have drawn reasonable inferences regarding these processes based upon (among other things) the facts set forth above.

## III.   PLAINTIFFS ARE NOT REQUIRED TO SEEK OR EXHAUST ADMINISTRATIVE REMEDIES PRIOR TO FILING SUIT.

52.   Plaintiffs are not required to seek, much less exhaust, administrative remedies, prior to filing this action. To the contrary, the summary plan description provides that, "If it should happen that Plan fiduciaries misuse the Plan's money, or you are discriminated against for asserting your rights, you may seek assistance from the U.S. Department of Labor, or you may file suit in a federal court." Exhibit A, Koch Industries Employees' Savings Plan Summary Plan Description at 35.[20]

53.   Even if Plaintiffs were required to exhaust administrative remedies prior to filing suit, the Eleventh Circuit recognizes an "exception to exhaustion when the plaintiff's failure to exhaust administrative remedies resulted from certain language in the plan's summary description that the plaintiff 'reasonably interpreted as meaning that she could go straight to court with her claim.'" *McCay v.*

---

[20] This exact language also appears in the summary plan descriptions for the GP Hourly Plan and GP Salary Plan.

*Drummond Co.*, 509 F. App'x 944, 946 (11th Cir. 2013) (quoting *Watts v. BellSouth Telecommunications, Inc.*, 316 F.3d 1203, 1204 (11th Cir. 2003)).[21] Plaintiffs reasonably interpreted the language of the summary plan description as meaning they could file suit in a federal court without exhausting administrative remedies, and have proceeded accordingly as a result of their objectively reasonable interpretation. *See* Exhibit A at 35 ("If it should happen that Plan fiduciaries misuse the Plan's money, … you may file suit in a federal court.").

54.    Moreover, any attempt by Plaintiffs to exhaust administrative remedies would be futile or would result in an inadequate remedy. *See DeKalb Med. Ctr., Inc. v. Specialities & Paper Prod. Union No. 527 Health & Welfare Fund*, 2014 WL 12656295 (N.D. Ga. Sept. 29, 2014) ("The district court may … exercise its discretion not to require exhaustion when resort to administrative remedies would be futile or the remedy inadequate or where a claimant is denied meaningful access to the administrative scheme in place."). The Plans do not provide a review procedure for a claim such as this that is directed at the conduct of the Plans' fiduciaries and is brought on behalf of a class. Nor have Defendants shown any indication, after this lawsuit was filed, of honoring Plaintiffs' claim and providing the requested relief.

---

[21] "Where a valid exception applies, the district court has wide discretion to excuse the exhaustion requirement." *McCay*, 509 F. App'x at 947.

## CLASS ACTION ALLEGATIONS

55.   29 U.S.C. § 1132(a)(2) authorizes any participant or beneficiary of the Plans to bring an action individually on behalf of the Plans to obtain for the Plans the remedies provided by 29 U.S.C. § 1109(a). Plaintiffs seek certification of this action as a class action pursuant to this statutory provision and Fed. R. Civ. P. 23.

56.   Plaintiffs assert their claims on behalf of a class of participants and beneficiaries of the Plans defined as follows:[22]

> All participants and beneficiaries of the Georgia-Pacific LLC Hourly 401(k) Plan, the Georgia-Pacific LLC 401(k) Retirement Savings Plan, the Koch Industries Inc. Employees' Savings Plan, and the Flint Hills Resources Chemicals Salary Deferral Plan at any time on or after [July 16, 2014], excluding any persons with responsibility for the Plans' administrative functions or expenses.

57.   Numerosity: The Class is so numerous that joinder of all Class members is impracticable. The Plans had approximately 53,000 to 60,000 participants at all relevant times during the applicable period.

58.   Typicality:   Plaintiffs' claims are typical of the Class members' claims. Like other Class members, Plaintiffs are participants of the Plans and have suffered injuries as a result of Defendants' mismanagement of the Plans. Defendants treated Plaintiffs consistently with other Class members with respect to the Plans.

---

[22] Plaintiffs reserve the right to propose other or additional classes or subclasses in their motion for class certification or subsequent pleadings in this action.

Defendants' unlawful actions, omissions, and decisions affected all of the Plans' participants similarly.

59.   Adequacy:   Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs' interests are aligned with the Class that they seek to represent, and Plaintiffs have retained counsel experienced in complex class action litigation, including ERISA litigation. Plaintiffs do not have any conflicts of interest with any Class members that would impair or impede their ability to represent such Class members.

60.   Commonality: Common questions of law and fact exist as to all Class members and predominate over any questions solely affecting individual Class members, including but not limited to:

  a.  Whether Defendants are fiduciaries with respect to the Plans;

  b.  Whether Defendants breached their fiduciary duties by engaging in the conduct described herein;

  c.  The proper form of equitable and injunctive relief; and

  d.  The proper measure of monetary relief.

61.   Class certification is appropriate under Fed. R. Civ. P. 23(b)(1)(A) because prosecuting separate actions against Defendants would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for Defendants.

62.   Class certification is also appropriate under Fed. R. Civ. P. 23(b)(1)(B)

because adjudications with respect to individual Class members, as a practical matter, would be dispositive of the interests of the other persons not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests. Any award of prospective equitable relief by the Court would be dispositive of non-party participants' interests. The restoration of the property of the Plans that would be required under 29 U.S.C. §§ 1109 and 1132 would be similarly dispositive of the interests of other participants of the Plans.

63.    Class certification is also appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Class predominate over any questions affecting only individual Class members, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Defendants' conduct as described in this Complaint applied uniformly to all members of the Class. Class members do not have an interest in pursuing separate actions against Defendants, as the amount of each Class member's individual claims is relatively small compared to the expense and burden of individual prosecution, and Plaintiffs are unaware of any similar claims brought against Defendants by any Class members on an individual basis. Class certification also will obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendants' practices. Moreover, management of this action as a class action will not present any likely difficulties. In the interests

of justice and judicial efficiency, it would be desirable to concentrate the litigation

of all Class members' claims in a single proceeding in a single forum.

## COUNT I
### Breach of Duties of Loyalty and Prudence
### 29 U.S.C. § 1104(a)(1)(A)–(B) (against all Defendants)

64.    As alleged above, Defendants are fiduciaries with respect to the Plans

and are subject to ERISA's fiduciary duties.

65.    29 U.S.C. § 1104 imposes fiduciary duties of loyalty and prudence

upon Defendants in connection with their administration of the Plans and the

selection and monitoring of the Plans' recordkeeper. The scope of these fiduciary

duties and responsibilities includes managing the assets of the Plans for the sole and

exclusive benefit of the Plans' participants and beneficiaries, defraying reasonable

expenses of administering the Plans, and acting with appropriate care, skill,

diligence, and prudence. *See* 29 U.S.C. § 1104; *Pledger*, 240 F. Supp. 3d at 1321.

66.    Defendants breached these fiduciary duties by engaging in the conduct

described herein. Among other things, Defendants imprudently caused the Plans to

pay excessive recordkeeping fees and failed to properly monitor and control

recordkeeping expenses. Each of the actions and omissions described above and

elsewhere in this Complaint demonstrate that Defendants failed to discharge their

duties with respect to the Plans solely in the interest of the participants and

beneficiaries of the Plans, and for the exclusive purpose of providing benefits to

participants and their beneficiaries and defraying reasonable expenses of administering the Plans, in violation of their fiduciary duty of loyalty under 29 U.S.C. § 1104(a)(1)(A).

67.     Further, each of the actions and omissions described in paragraph 66 above and elsewhere in this Complaint demonstrate that Defendants failed to discharge their duties with respect to the Plans with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would have used in the conduct of an enterprise of like character and with like aims, in violation of 29 U.S.C. § 1104(a)(1)(B).

68.     As a consequence of Defendants' fiduciary breaches, the Plans and the participants in the Plans suffered millions of dollars in excess fees.

69.     Defendants are liable, under 29 U.S.C. §§ 1109 and 1132, to make good to the Plans all losses resulting from Defendants' fiduciary breaches. In addition, Defendants are liable for additional equitable relief and other relief as provided by ERISA and applicable law.

## COUNT II
### Failure to Monitor Fiduciaries (against Koch Industries)

70.     As alleged throughout the Complaint, Koch Industries is a fiduciary of the Plans pursuant to 29 U.S.C. § 1002(21).

71.     Koch Industries is responsible for appointing and removing the

Committee members.

72.   Given that Koch Industries had overall oversight responsibility for the Plans, and the fiduciary duty to appoint and remove members of the Committee, Koch Industries had a fiduciary responsibility to monitor the performance of the Committee.

73.   A monitoring fiduciary must ensure that the monitored fiduciaries are adequately performing their fiduciary obligations, including those with respect to the investment and holding of plan assets, and must take prompt and effective action to protect the plan and participants when the monitored fiduciaries are not meeting their fiduciary obligations.

74.   Koch Industries breached its fiduciary monitoring duties by, among other things:

> a.  Failing to monitor and evaluate the performance of its appointees or have a system in place for doing so, standing idly by as the Plans suffered significant losses as a result of its appointees' imprudent actions and omissions with respect to the Plans;
>
> b.  Failing to monitor its appointees' fiduciary processes, which would have alerted a prudent fiduciary to the breaches of fiduciary duties described herein; and
>
> c.  Failing to remove appointees whose performance was inadequate in

that it continued to allow the Plans to pay excessive costs for recordkeeping services, to the detriment of the Plans and the retirement savings of the Plans' participants.

75.    As a consequence of the foregoing breaches of the duty to monitor, the Plans suffered millions of dollars of losses due to excessive fees.

76.    Pursuant to 29 U.S.C. §§ 11l09(a), 1132(a)(2), and 1132(a)(3), Koch Industries is liable to restore to the Plans all losses suffered as a result of its failure to properly monitor the Plans' fiduciaries, and subsequent failure to take prompt and effective action to rectify the fiduciary breaches described herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs David Kinder, Tracy Scott, Elbert Peay, Cherry Crawford, and Ross Sodahl, as representatives of the Class defined herein and on behalf of the Plans, pray for relief as follows:

A.    A determination that this action may proceed as a class action under Rule 23(b)(1), or in the alternative, Rule 23(b)(3) of the Federal Rules of Civil Procedure;

B.    Designation of Plaintiffs as Class Representatives and designation of Plaintiffs' counsel as Class Counsel;

C.    A declaration that Defendants have breached their fiduciary duties in the manner described in the Complaint;

D.    An order compelling Defendants to make good to the Plans all losses

that the Plans incurred as a result of the breaches of fiduciary duties described herein, and to restore the Plans to the position they would have been in but for this unlawful conduct;

E.    An order granting appropriate equitable monetary relief, including but not limited to restitution or a surcharge against Defendants;

F.    An order enjoining Defendants from any further violations of ERISA;

G.    Other equitable relief to redress Defendants' illegal practices and to enforce the provisions of ERISA as may be appropriate, including appointment of an independent fiduciary or fiduciaries to review or manage the Plans recordkeeping services and expenses, and removal or replacement of the Plans' fiduciaries deemed to have breached their fiduciary duties;

H.    An award of pre-judgment interest;

I.    An award of attorneys' fees and costs pursuant to 29 U.S.C. § 1132(g) and/or the common fund doctrine; and

J.    An award of such other and further relief as the Court deems equitable and just.

Dated:  October 9, 2020                **NICHOLS KASTER, PLLP**

                                       s/Kai Richter
                                       Paul J. Lukas, MN Bar No. 022084X*
                                       Kai Richter, MN Bar No. 0296545*
                                       Brock J. Specht, MN Bar No. 0388343*
                                       Grace I. Chanin, MN Bar No. 0399969*
                                       * admitted *pro hac vice*
                                       4700 IDS Center
                                       80 S 8th Street
                                       Minneapolis, MN 55402
                                       Telephone: 612-256-3200
                                       Facsimile: 612-338-4878
                                       plukas@nka.com
                                       krichter@nka.com
                                       bspecht@nka.com
                                       gchanin@nka.com

                                       **AUSTIN & SPARKS, P.C.**
                                       John T. Sparks, Sr., GA Bar No.669575
                                       2974 Lookout Place N.E., Suite 200
                                       Atlanta, GA 30305
                                       Telephone: 404-869-0100
                                       Facsimile: 404-869-0200
                                       jsparks@austinsparks.com

                                       **SANFORD LAW FIRM**
                                       Josh Sanford*
                                       * admitted *pro hac vice*
                                       1 Financial Centre
                                       650 S. Shackleford, Suite 411
                                       Little Rock, AR  72211
                                       Telephone: 501-221-0088
                                       Facsimile: 888-787-2040
                                       josh@sanfordlawfirm.com

                                       Counsel for Plaintiffs and the proposed
                                       Class

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing document has been prepared in accordance with the font and point requirements of L.R. 5.1(C) of the United States District Court for the Northern District of Georgia, using 14-point Times New Roman font, as approved by the Court.

Dated: October 9, 2020                    s/Kai Richter
                                          Kai Richter


## CERTIFICATE OF SERVICE

I hereby certify that on October 9, 2020, I caused a copy of the foregoing to be electronically filed with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

Dated: October 9, 2020                    s/Kai Richter
                                          Kai Richter