## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| David Kinder, Tracy Scott, Elbert Peay, and Cherry Crawford, individually and as representatives of a class of similarly situated persons, and on behalf of the Georgia-Pacific LLC Hourly 401(k) Plan, the Georgia-Pacific LLC 401(k) Retirement Savings Plan, and the Koch Industries Inc. Employees' Savings Plan,<br><br>     Plaintiffs,<br><br>v.<br><br>Koch Industries, Inc., Koch Business Solutions, LP, the Koch Benefits Administrative Committee, and John Does 1-30,<br><br>     Defendants. | Case No. 1:20-cv-02973-MHC<br><br>**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |

# TABLE OF CONTENTS

INTRODUCTION ................................................................1

BACKGROUND ...............................................................3

   I.     THE PLEADINGS AND MOTION TO DISMISS ..................................3

   II.    EARLY DISCOVERY, MEDIATION AND SETTLEMENT ....................................4

   III.   OVERVIEW OF SETTLEMENT TERMS .............................................4

      A. Settlement Class ......................................................4

      B.  Monetary Relief.....................................................5

      C.  Prospective Relief...................................................6

      D.  Release of Claims...................................................6

      E.  Class Notice and Settlement Administration ........................................7

      F.  Attorneys' Fees and Expenses.............................................8

      G.  Review by Independent Fiduciary.........................................8

ARGUMENT .................................................................9

   I.     STANDARD OF REVIEW ...............................................9

   II.    THE SETTLEMENT SATISFIES THE STANDARD FOR PRELIMINARY APPROVAL ..............................................................11

      A. The Settlement Was Negotiated at Arm's Length by Experienced Counsel with the Assistance of a Neutral Mediator............................11

      B. The Class Was Adequately Represented............................12

C. The Settlement Provides Significant Relief to the Class that Is Fair and Adequate Based on All Relevant Considerations ........................14

    1. Risks, Costs and Delay of Continued Litigation............................16

    2. Effectiveness of Distribution Method ............................................18

    3. Attorneys' Fees ..............................................................................19

    4. Other Agreements ...........................................................................20

D. The Settlement Treats Class Members Equitably ...............................20

III. THE CLASS NOTICE PLAN IS REASONABLE AND SHOULD BE APPROVED..21

IV. THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS...........................22

A. The Proposed Settlement Class Satisfies Rule 23(a) ..........................23

B. The Proposed Class Satisfies Rule 23(b)(1).......................................24

CONCLUSION .....................................................................................................25

# TABLE OF AUTHORITIES

**Cases**

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997)......................................................................................23

*Bennett v. Behring Corp.*,
   76 F.R.D. 343 (S.D. Fla. 1982)....................................................................18

*Bennett v. Behring Corp.*,
   737 F.2d 982 (11th Cir. 1984) ...............................................................10, 18

*Bhatia v. McKinsey & Co.,*
   No. 1:19-cv-01466, Dkt. 91-1 (S.D.N.Y. Sept. 16, 2020)...........................16

*Brotherston v. Putnam Invs., LLC*,
   907 F.3d 17 (1st Cir. 2018)..................................................................... 12-13

*Clark v. Oasis Outsourcing Holdings Inc.*,
   No. 18-81101, Dkt. 23 (S.D. Fla. Dec. 20, 2018) ........................................20

*Cox v. Am. Cast Iron Pipe Co.*,
   784 F.2d 1546 (11th Cir. 1986) ...................................................................23

*Fuller v. SunTrust Banks, Inc.*,
   No. 1:11-cv-00784, Dkt. 295-1 (N.D. Ga. June 5, 2020).............................17

*Gen. Tel. Co. of Sw. v. Falcon*,
   457 U.S. 147 (1982).....................................................................................24

*Henderson v. Emory Univ.*,
   2020 WL 9848975 (N.D. Ga. Nov. 4, 2020)....................................16, 18, 22

*In re BellSouth Corp. ERISA Litig.*,
   2006 WL 8431178 (N.D. Ga. Dec. 5, 2006) .................................................11

*In re Glob. Crossing Sec. & ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004) ...........................................................23, 25

*In re the Home Depot, Inc., Customer Data Sec. Breach Litig.*,
  2016 WL 6902351 (N.D. Ga. Aug. 23, 2016) ......................................12, 18

*In re M&T Bank Corp. ERISA Litig.*,
  No. 1:16-cv-00375, Dkt. 159-1 (W.D.N.Y. Dec. 26, 2019) ........................16

*In re Rite Aid Corp. Sec. Litig.*,
  146 F.Supp.2d 706 (E.D. Pa. 2001) ..............................................................15

*In re U.S. Oil & Gas Litig.*,
  967 F.2d 489 (11th Cir. 1992) ......................................................................10

*Johnson v. Fujitsu Tech. & Bus. Ass'n of Am., Inc.*,
  No. 5:16-cv-03698, Dkt. 128-10 (N.D. Cal. Jan. 11, 2017) ........................16

*Johnson v. Fujitsu Tech. & Bus. of Am., Inc.*,
  2018 WL 2183253 (N.D. Cal. May 11, 2018) ..............................................15

*Karpik v. Huntington Bancshares Inc.*,
  2021 WL 757123 (S.D. Ohio Feb. 18, 2021) ...................................12, 14, 19

*Krueger v. Ameriprise Fin., Inc.*,
  2015 WL 4246879 (D. Minn. July 13, 2015) .........................................17, 19

*Kruger v. Novant Health*,
  2016 WL 6769066 (M.D.N.C. Sept. 29, 2016) ............................................19

*Moreno v. Deutsche Bank Ams. Holding Corp.*,
  2017 WL 3868803 (S.D.N.Y Sept. 5, 2017) ................................................11

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
  339 U.S. 306 (1950).......................................................................................22

*Ortiz v. Fibreboard Corp.*,
  527 U.S. 815 (1999).......................................................................................25

*Phillips Petroleum Co. v. Shutts,*
    472 U.S. 797 (1985)......................................................................21

*Pizarro v. Home Depot, Inc.,*
    2020 WL 6939810 (N.D. Ga. Sept. 21, 2020).....................................*passim*

*Pledger v. Reliance Tr. Co.,*
    2019 WL 10886802 (N.D. Ga. Mar. 28, 2019) ............................................16

*Pledger v. Reliance Tr. Co.,*
    2021 WL 2253497 (N.D. Ga. Mar. 8, 2021) ..........................................19, 22

*Ramos v. Banner Health,*
    461 F. Supp. 3d 1067 (D. Colo. 2020) .........................................................17

*Sacerdote v. New York Univ.,*
    328 F. Supp. 3d 273 (S.D.N.Y. 2018) ....................................................16, 17

*Sims v. BB&T Corp.,*
    2017 WL 3730552 (M.D.N.C. Aug. 28, 2017) ............................................13

*Sims v. BB&T Corp.,*
    2019 WL 1995314 (M.D.N.C. May 6, 2019).........................................15, 20

*Stevens v. SEI Invs. Co.,*
    2020 WL 996418 (E.D. Pa. Feb. 28, 2020)...................................................20

*Tibble v. Edison Int'l,*
    2017 WL 3523737 (C.D. Cal. Aug. 16, 2017) .............................................17

*Tussey v. ABB, Inc.,*
    850 F.3d 951 (8th Cir. 2017) .......................................................................17

*United States v. Tex. Educ. Agency,*
    679 F.2d 1104 (5th Cir. 1982) .....................................................................11

*Urakhchin v. Allianz Asset Mgmt. of Am., L.P.,*
    2018 WL 8334858 (C.D. Cal. July 30, 2018) ..............................................15

*Valley Drug Co. v. Geneva Pharms., Inc.*,
    350 F.3d 1181 (11th Cir. 2003) ....................................................13

*Wildman v. Am. Century Servs., LLC*,
    362 F. Supp. 3d 685 (W.D. Mo. 2019)........................................16

*Williams v. Mohawk Indus., Inc.*,
    568 F.3d 1350 (11th Cir. 2009) ...................................................23

## Rules, Statutes, Regulations

Fed. R. Civ. P. 15(a)(2) .......................................................................3

Fed. R. Civ. P. 23(a)...................................................................23, 24

Fed. R. Civ. P. 23(b)(1)...............................................................24, 25

Fed. R. Civ. P. 23(c)(2)(B) ...............................................................21

Fed. R. Civ. P. 23(c)(2)(C)(iv)...........................................................20

Fed. R. Civ. P. 23(e)...........................................................................9

Fed. R. Civ. P. 23(e) advisory cmte note (2018) ...........................9, 10, 12

Fed. R. Civ. P. 23(e)(1).....................................................................21

Fed. R. Civ. P. 23(e)(1)(B) ..................................................................9

Fed. R. Civ. P. 23(e)(2)...................................................................9, 10

Fed. R. Civ. P. 23(e)(2)(C) ................................................................16

Fed. R. Civ. P. 23(e)(2)(C)(i).............................................................16

Fed. R. Civ. P. 23(e)(2)(C)(ii)............................................................16

Fed. R. Civ. P. 23(e)(2)(C)(iii) ..........................................................16

Fed. R. Civ. P. 23(e)(2)(C)(iv)...................................................................16

Fed R. Civ. P. 23(e)(3).............................................................................10

29 U.S.C. § 1109......................................................................................25

29 U.S.C. § 1132(a)(2)..............................................................................25

8 Fed. Reg. 75632.......................................................................................9

75 Fed. Reg. 33830.....................................................................................9

## **Other Authorities**

MANUAL FOR COMPLEX LITIGATION § 30.41 (3d ed. 1995).......................................9

## INTRODUCTION

Plaintiffs David Kinder, Tracy Scott, Elbert Peay, and Cherry Crawford ("Plaintiffs") submit this Memorandum in support of their Motion for Preliminary Approval of their class action settlement ("Settlement" or "Settlement Agreement") with Defendants Koch Industries, Inc., Koch Business Solutions, LP, and the Koch Benefits Administrative Committee ("Defendants") relating to the management of the Georgia-Pacific LLC Hourly 401(k) Plan ("GP Hourly Plan"), the Georgia-Pacific LLC 401(k) Retirement Savings Plan ("GP Salaried Plan"), and the Koch Industries Inc. Employees' Savings Plan ("Koch Plan") (collectively, the "Plans").[1]

Under the terms of the proposed Settlement, a Gross Settlement Amount of $4 million will be paid to resolve the claims of Settlement Class Members who participated in the Plans during the subject period. This is a significant recovery for the Class in relation to the recordkeeping claims that were alleged, and falls well within the range of negotiated settlements in similar ERISA cases. Moreover, the Settlement also provides for meaningful prospective relief, as Koch has agreed to issue a new request for proposals ("RFP") for recordkeeping services for the Plans within one hundred eighty (180) days of the Settlement Effective Date.

---

[1] The proposed Settlement Agreement is attached as **Exhibit A** to the accompanying Declaration of Kai Richter ("Richter Decl.").

For the reasons set forth below, the Settlement is fair, reasonable, and adequate, and merits preliminary approval so that the proposed Settlement Notices can be sent to the Settlement Class. Among other things:

- The Settlement was negotiated at arm's length by experienced and capable counsel, with the assistance of a neutral mediator;

- The proposed Settlement Class is consistent with settlement classes approved in other ERISA cases;

- The Settlement provides for significant monetary relief that compares favorably to settlements in other cases;

- The Settlement conveniently provides for automatic distribution of the settlement proceeds to the Plan accounts of Current Participants in the Plans, while Former Participants have the option of submitting a Rollover Form or otherwise receiving their distribution by check;

- The Settlement provides for meaningful prospective relief that is designed to ensure that the Plans' recordkeeping expenses are reasonable going forward;

- The proposed Settlement Notices provide fulsome information to Class Members about the Settlement, and will be distributed via first-class mail; and

- The Settlement Agreement provides Class Members the opportunity to raise any objections they may have to the Settlement and appear at the final approval hearing.

Accordingly, Plaintiffs respectfully request that the Court enter the proposed Preliminary Approval Order submitted herewith. Defendants do not oppose the motion as parties to the Settlement Agreement.

## BACKGROUND

### I.    THE PLEADINGS AND MOTION TO DISMISS

On July 16, 2020, the initial Class Representatives, David Kinder and Tracy Scott, filed a Class Action Complaint (*Dkt. 1*) asserting claims against Defendants under ERISA in relation to the management of the at-issue Plans. On September 16, 2020, Defendants filed a motion to dismiss the Complaint. *Dkt. 30*. On September 30, 2020, an Amended Complaint was filed, adding Elbert Peay and Cherry Crawford as additional Class Representatives. *Dkt. 34*. Pursuant to Fed. R. Civ. P. 15(a)(2), a Second Amended Complaint (*Dkt. 39*) and Third Amended Complaint (*3d Am. Compl., Dkt. 47*) were subsequently filed.

In their Third Amended Complaint, Plaintiffs allege that Defendants failed to prudently monitor or control recordkeeping expenses, and allowed Plaintiffs and other class members to be charged excessive amounts for recordkeeping. *See generally 3d. Am. Compl.* On October 22, 2020, Defendants filed a motion to dismiss the Third Amended Complaint. *Dkt. 48*. Plaintiffs filed a memorandum of law in opposition to Defendants' motion on November 5, 2020 (*Dkt. 50*), to which Defendants replied on November 18, 2020 (*Dkt. 51*). Defendants' motion to dismiss remained pending at the time the Court stayed the litigation pending negotiation of the present Settlement. *See Dkt. 58, 60*.

## II.    EARLY DISCOVERY, MEDIATION, AND SETTLEMENT

While Defendants' motion to dismiss was pending, the Settling Parties agreed to engage in early discovery to facilitate settlement discussions, which included the production of over 8,200 pages of documents and other information by Defendants. *Richter Decl. ¶ 11.* Following production and review of these materials, the parties engaged in a full-day mediation with a neutral mediator, Martin F. Scheinman, on April 13, 2021.[2] *Id. ¶ 12.* After extensive arm's length negotiations, the parties reached a settlement in principle, and then prepared the comprehensive Settlement Agreement that is the subject of this motion. *Id. ¶ 13.*

## III.    OVERVIEW OF SETTLEMENT TERMS

### A.    Settlement Class

The Settlement Agreement calls for certification of the following Settlement Class:

> All participants and beneficiaries of the Georgia-Pacific LLC Hourly 401(k) Plan, the Georgia-Pacific LLC 401(k) Retirement Savings Plan, and the Koch Industries Inc. Employees' Savings Plan at any time between July 16, 2014 and December 31, 2020.

*Settlement Agreement ¶ 2.44.* Based on the information provided by Defendants, there are approximately 101,000 Settlement Class Members. *Richter Decl. ¶ 3.*

---

[2] Mr. Scheinman is an experienced mediator who has successfully facilitated the resolution of a number of ERISA class actions. *Id. & Ex. B.*

### B.     Monetary Relief

Under the terms of the proposed Settlement, a Gross Settlement Amount of $4 million will be paid to resolve the claims of the Class Members. *Settlement Agreement ¶ 2.30.*[3] After accounting for any Attorneys' Fees and Costs, Administrative Expenses, and Class Representative Compensation approved by the Court, the Net Settlement Amount will be distributed to eligible Class Members in accordance with the Plan of Allocation in the Settlement. *Id. ¶¶ 2.35, 5.9.*

Under the Plan of Allocation, a Settlement Allocation Score will be calculated for each Class Member, which shall be the sum of their Excess Deduction Score and Excess Recordkeeping Rate Score. *Id. ¶ 6.4.1.* The Excess Deduction Score represents the difference between the amount that was deducted by the trustee from Class Members' Plan accounts for recordkeeping services, and the amount that was actually paid out of the trust for recordkeeping services during the Class Period. *Id. ¶ 6.4.1.1; see also id. ¶¶ 2.18, 2.21.* The Excess Recordkeeping Rate Score represents the difference in the Base Recordkeeping Rate that was charged by the Plan's recordkeeper for recordkeeping services in 2014-2017 ($41), and the amount

---

[3] The entirety of the Gross Settlement Amount shall be paid by Koch, with the exception of the portion of the Entitlement Amount paid to Settlement Class Members in connection with their Excess Deduction Score (as discussed below), which may be paid out of the alleged excess amount that was retained in the Plans' trust account (subject to a cap of $2.3 million). *Settlement Agreement ¶¶ 2.30, 6.4.4.*

that was charged after the recordkeeping contract was renegotiated in 2018 ($35). *Id. ¶ 6.4.1.2; see also id. ¶ 2.6.* Each Class Member will then receive a pro rata share of the Net Settlement Amount based on their Settlement Allocation Score in relation to other Class Members. *Id. ¶¶ 2.24, 6.4.2.*

Current Participants will have their Plan accounts automatically credited with their Entitlement Amount. *Id. ¶ 6.5.* Former Participants will have the opportunity to submit a Rollover Form allowing them to have their distribution rolled over into an individual retirement account or other eligible employer plan. *Id. ¶ 6.6.* Former Participants who do not timely submit a Rollover Form will be sent a check. *Id.*[4]

## C.    Prospective Relief

In addition to the foregoing monetary relief, the Settlement also provides that Defendants shall issue a new request for proposals for recordkeeping services for the Plans within 180 days of the Settlement Effective Date. *Id. ¶ 7.1.*

## D.    Release of Claims

In exchange for this relief, the Settlement Class will release the Defendants and affiliated persons and entities (the "Released Parties") from all claims arising prior to the end of the Cass Period:

- That (a) were asserted or could have been asserted in the Action (including any assertion set forth in the Third Amended Complaint or

---

[4] Any uncashed checks will be paid into the Plans for the purpose of defraying administrative fees and expenses of the Plans. *Id. ¶¶ 6.10, 6.11.*

any of the prior complaints), or (b) that are based on generally the same factual predicate as any of the claims in the Third Amended Complaint, and, as to (a) and (b), include but are not limited to those that arise out of, relate to, are based on, or have any connection with (i) the selection, oversight, retention or performance of Alight Solutions LLC [the Plan's recordkeeper] or any affiliate thereof or predecessor thereof in connection with the Plans, or (ii) the amounts paid to, received by, charged by, or deducted for recordkeeping, administrative or other services provided by Alight or any affiliate or predecessor thereof, or any prior affiliate of such predecessor that are related to the Plans;

- That would be barred by res judicata based on entry by the Court of the Final Approval Order;

- That relate to the direction to calculate, the calculation of, and/or the method or manner of allocation of the Net Settlement Amount pursuant to the Plan of Allocation; or

- That relate to the approval by the Independent Fiduciary of the Settlement Agreement.

*See id. ¶ 2.39.* The Released Claims do not include (i) claims to enforce the Settlement Agreement, (ii) individual claims for denial of benefits from the Plan. *Id.*

### E. Class Notice and Settlement Administration

Class Members will be sent a direct notice of the settlement ("Settlement Notice") via first-class U.S. Mail. *Id. ¶ 3.3.1, & Exs. 1 & 2.* The Settlement Notice sent to Former Participants also will include a Former Participant Rollover Form enabling them to make the rollover election described above. *Id. ¶ 3.3.2 & Ex. 3.*

To the extent that Class Members would like more information about the Settlement, the Settlement Administrator will establish a Settlement Website on which it will post the Third Amended Complaint, Settlement Agreement and

Exhibits thereto, Settlement Notices, Former Participant Rollover Form, Preliminary Approval Order and any other Court orders related to the Settlement, and Plaintiffs' Motion for Attorneys' Fees and Costs, Administrative Expenses, and Class Representatives' Compensation once it is filed. *Id. ¶ 12.1.* Further, the Settlement Administrator will establish a toll-free telephone line that will provide callers the option of speaking with a live operator if they have questions. *Id. ¶ 12.2.*[5]

### F.     Attorneys' Fees and Expenses

The Settlement Agreement requires that Class Counsel file their motion for attorneys' fees at least 30 days before the deadline for objections to the proposed Settlement. *Id. ¶ 8.1.* As explained in the Notices that will be sent to the Settlement Class, Class Counsel will seek no more than one-fourth of the Gross Settlement Amount ($1,000,000) in attorneys' fees. *Id. ¶¶ 8.1-8.2, Exs. 1 & 2.* In addition, the Settlement Agreement provides for recovery of Costs, Administrative Expenses, and Class Representative Compensation of up to $5,000 per Class Representative subject to Court approval. *Id. ¶¶ 8.1-8.2.*

### G.     Review by Independent Fiduciary

As required under ERISA, Defendants will retain an Independent Fiduciary to review and authorize the Settlement on behalf of the Plans. *Id. ¶ 3.1*; *see also*

---

[5] Analytics Consulting, LLC has been selected as the Settlement Administrator. *Id. ¶ 2.42*; *Richter Decl. ¶ 28 & Ex. D*.

Prohibited Transaction Exemption 2003-39, 68 Fed. Reg. 75632, as amended, 75 Fed. Reg. 33830. The Independent Fiduciary will issue its report prior to the Fairness Hearing so that the Court may consider it. *Settlement Agreement ¶ 3.1.2.*

## ARGUMENT

### I. STANDARD OF REVIEW

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval of any settlement agreement that will bind absent class members. This involves a two-step process. MANUAL FOR COMPLEX LITIGATION § 30.41, at 236 (3d ed. 1995). First, counsel submit the proposed settlement terms to the court, and the court makes a preliminary fairness evaluation. *Id*. Second, following preliminary approval, class members are provided notice of a fairness hearing, at which time arguments and evidence may be presented in support of, or opposition to, the settlement. *Id.*

In 2018, Rule 23(e) was amended to specify uniform standards for settlement approval. *See* Fed. R. Civ. P. 23(e) advisory cmte note (2018). The amended rule states that, at the preliminary approval stage, the court must determine whether it "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). Rule 23(e)(2), in turn, specifies the following factors the court should consider at the

final approval stage in determining whether a settlement is "fair, reasonable, and adequate":

(A)   the class representatives and class counsel have adequately represented the class;

(B)   the proposal was negotiated at arm's length;

(C)   the relief provided for the class is adequate, taking into account:

(i)     the costs, risks, and delay of trial and appeal;

(ii)    the effectiveness of any proposed method of distributing relief to the class;

(iii)   the terms of any proposed award of attorney's fees; and

(iv)    any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). The stated goal of this amendment is to "focus the court … on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Fed. R. Civ. P. 23(e) advisory cmte note (2018).

The ultimate decision whether to approve a proposed class action settlement is "committed to the sound discretion of the district court." *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992). However, in exercising this discretion, courts are mindful of the "strong judicial policy favoring settlement," as well as "the realization that compromise is the essence of settlement." *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984).

## II. THE SETTLEMENT SATISFIES THE STANDARD FOR PRELIMINARY APPROVAL

As discussed below: (1) the settlement was negotiated at arm's length by experienced counsel with the assistance of a neutral mediator, (2) the Class was adequately represented by Plaintiffs and Class Counsel, (3) the relief provided is adequate in light of the risks and costs of further litigation; and (4) the proposed Plan of Allocation is efficient and treats all Class Members equitably. Accordingly, this Court should grant preliminary approval of the Settlement.

### A. The Settlement Was Negotiated at Arm's Length by Experienced Counsel with the Assistance of a Neutral Mediator

"[W]here experienced counsel have negotiated a settlement at arm's-length, with the help of an experienced mediator, a strong initial presumption is created that the compromise is fair and reasonable." *In re BellSouth Corp. ERISA Litig.*, 2006 WL 8431178, at *4 (N.D. Ga. Dec. 5, 2006) (citing *United States v. Tex. Educ. Agency*, 679 F.2d 1104, 1108 (5th Cir. 1982)). That is exactly the situation presented here. Class Counsel are "experienced litigators who serve as class counsel in ERISA actions involving defined-contribution plans[.]" *Moreno v. Deutsche Bank Ams. Holding Corp.*, 2017 WL 3868803, at 11 (S.D.N.Y Sept. 5, 2017).[6] Prior to negotiating a settlement, the parties fully briefed a motion to dismiss and engaged in

___

[6] Class Counsel's extensive experience in ERISA class action litigation is set forth in the accompanying attorney declaration, *see Richter Decl. ¶¶ 18-20*, and discussed further below, *see infra* at 12-13.

early discovery. *See supra* at 4. And their settlement discussions were facilitated by an experienced mediator who is familiar with ERISA cases such as this. *See Richter Decl. ¶ 12 & Ex. B.* This confirms that the negotiations were conducted at arm's length and were procedurally fair. *See, e.g.*, *In re the Home Depot, Inc., Customer Data Sec. Breach Litig.,* 2016 WL 6902351, at *5 (N.D. Ga. Aug. 23, 2016) (approving settlement and finding no collusion where experienced mediator oversaw negotiations); Fed. R. Civ. P. 23(e) advisory cmte note (2018) ("[T]he involvement of a neutral or court-affiliated mediator or facilitator in those negotiations may bear on whether they were conducted in a manner that would protect and further the class interests.").

## B.    The Class Was Adequately Represented

The record also reflects that the class was adequately represented. As noted above, Class Counsel are experienced ERISA litigators. Indeed, "Class Counsel is one of the relatively few firms in the country that has the experience and skills necessary to successfully litigate a complex ERISA action such as this." *Karpik v. Huntington Bancshares Inc.*, 2021 WL 757123, at *9 (S.D. Ohio Feb. 18, 2021). Class Counsel have won favorable rulings on class certification and dispositive motions in several ERISA cases, recently tried three other ERISA class actions, successfully litigated an appeal before the First Circuit in *Brotherston v. Putnam*

*Invs., LLC*, 907 F.3d 17 (1st Cir. 2018), and have negotiated class action settlements that have received court approval in numerous cases in addition to this case. *See Richter Decl. ¶¶ 18-20.* Accordingly, Class Counsel are clearly adequate to represent the class. *See Sims v. BB&T Corp.*, 2017 WL 3730552, at \*5 (M.D.N.C. Aug. 28, 2017) ("*Sims I*") ("[T]he Court finds that the plaintiffs' interests would be 'fairly and adequately' represented by appointment of… Nichols Kaster as class counsel.").

The named Plaintiffs also are adequate class representatives.[7] "The Eleventh Circuit applies a two-prong test for adequacy: '(1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action.'" *Pizarro v. Home Depot, Inc.*, 2020 WL 6939810, at \*10 (N.D. Ga. Sept. 21, 2020) (quoting *Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003)). Both of these prongs are met. Plaintiffs are not aware of any conflicts of interest with other Class Members, and they have attested to their participation in the action and their willingness carry out their responsibilities as class representatives. *See Kinder Decl.*

---

[7] There is at least one named Plaintiff who participated in each of the Plans that is included in the class definition, which resolves the standing issue that Defendants raised in their initial motion to dismiss before the complaint was amended to include additional Plaintiffs. *See Dkt. 30-01* (challenging standing of plaintiffs to sue with respect to "unrelated plans"); *compare Dkt. 48-01* (omitting this argument after complaint was amended and focusing exclusively on whether Plaintiffs exhausted administrative remedies).

*¶ 2 & Ex. 1; Scott Decl. ¶ 2 & Ex. 1; Peay Decl. ¶ 2 & Ex. 1; Crawford Decl. ¶ 2 & Ex. 1*. This is sufficient to demonstrate adequacy. *See Pizarro*, 2020 WL 6939810, at *11 (finding adequacy requirement satisfied where Plaintiffs "submitted affidavits attesting to their participation in this action and their willingness to pursue the case vigorously"). "Further, Plaintiffs' interest in establishing Defendants' liability for the alleged breaches of duty and obtaining relief are fully aligned with the interests of absent Class members." *Id.*

### C.    The Settlement Provides Significant Relief to the Class that Is Fair and Adequate Based on All Relevant Considerations

The relief provided by the Settlement is also adequate. The $4 million Gross Settlement Amount represents approximately 25% to 40% of the alleged excess charges paid by the Class for recordkeeping services, depending on the benchmark used for purposes of calculating a reasonable recordkeeping rate.[8] *See Richter Decl. ¶ 4*. This compares favorably with recoveries in other ERISA class actions. *See, e.g.*, *Karpik*, 2021 WL 757123, at *8 (approving $10.5 million settlement that represented 30% of estimated damages, including damages due to excessive recordkeeping

---

[8] Plaintiffs used two models to calculate the allegedly excess charges. *See Richter Decl. ¶ 4 n.3*. The first model was based on the rate that Fidelity stipulated to charging other plans in a different case, which yielded an alleged excess of $15.82 million. *Id.* The second model was based on the bids that were received when Defendants renegotiated the Plans' recordkeeping contract in 2018, and yielded an alleged excess of $9.86 million. *Id.*

expenses); *Sims v. BB&T Corp.*, 2019 WL 1995314, at *5 (M.D.N.C. May 6, 2019) ("*Sims II*") (approving $24 million settlement that represented 19% of estimated damages, including damages due to excessive recordkeeping expenses); *Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*, 2018 WL 8334858 (C.D. Cal. July 30, 2018) (approving $12 million settlement in ERISA case, where that amount represented approximately 25% of estimated total plan-wide losses of $47 million); *Johnson v. Fujitsu Tech. & Bus. of Am., Inc.*, 2018 WL 2183253, at *6-7 (N.D. Cal. May 11, 2018) (approving $14 million settlement in ERISA case involving alleged excess fees, where that amount represented "just under 10% of the Plaintiffs' most aggressive 'all in' measure of damages"); *accord In re Rite Aid Corp. Sec. Litig.*, 146 F.Supp.2d 706, 715 (E.D. Pa. 2001) (noting that class action settlements have typically "recovered between 5.5% and 6.2% of the class members' estimated losses").

Moreover, Koch has agreed to issue a new request for proposals ("RFP") for recordkeeping services, to ensure that the Plans are receiving the best possible rate going forward. *See Settlement Agreement ¶ 7.1.* This prospective relief is consistent with other class action settlements in cases involving allegedly excessive

recordkeeping fees,[9] and further supports approval of the Settlement. *See Henderson v. Emory Univ.*, 2020 WL 9848975, at *6 (N.D. Ga. Nov. 4, 2020).

Finally, each of the adequacy factors enumerated in Rule 23(e)(2)(C)(i)-(iv) also support approval of the Settlement. These factors are briefly discussed below.

### 1. Risks, Costs, and Delay of Continued Litigation

In the absence of a settlement, Plaintiffs would have faced potential risks. At the time the parties reached a settlement, Defendants' Motion to Dismiss was pending. In the event the motion was denied, there was a risk that the Court might have dismissed the claims on summary judgment, as it did in another recent case. *See Pledger v. Reliance Tr. Co.*, 2019 WL 10886802, at *28 (N.D. Ga. Mar. 28, 2019) ("*Pledger I*") (Cohen, J.) (granting summary judgment in defendants' favor on ERISA claim involving allegedly excessive recordkeeping fees). Assuming the case proceeded to trial, the Defendants still might have prevailed. *See Sacerdote v. New York Univ.*, 328 F. Supp. 3d 273 (S.D.N.Y. 2018) (granting judgment in favor of defendants on ERISA claims following bench trial); *Wildman v. Am. Century Servs., LLC*, 362 F. Supp. 3d 685 (W.D. Mo. 2019) (same). Finally, even if Plaintiff

---

[9] *See, e.g., Bhatia v. McKinsey & Co.,* No. 1:19-cv-01466, Dkt. 91-1 at ¶ 7.1.3 (S.D.N.Y. Sept. 16, 2020); *In re M&T Bank Corp. ERISA Litig.*, No. 1:16-cv-00375, Dkt. 159-1 at ¶ 7.1(d) (W.D.N.Y. Dec. 26, 2019); *Johnson v. Fujitsu Tech. & Bus. Ass'n of Am., Inc.*, No. 5:16-cv-03698, Dkt. 128-10 at ¶ 7.1 (N.D. Cal. Jan. 11, 2017).

prevailed at trial on liability, issues would have remained regarding proof of loss. *See Sacerdote*, 328 F. Supp. 3d at 280 (finding that "while there were deficiencies in the Committee's [fiduciary] processes—including that several members displayed a concerning lack of knowledge relevant to the Committee's mandate—plaintiffs have not proven that … the Plans suffered losses as a result."); *Ramos v. Banner Health*, 461 F. Supp. 3d 1067, 1134-35 (D. Colo. 2020) (stating that "[t]he Court declines to rely on [plaintiffs' expert's] testimony as to the reasonable annual ranges of recordkeeping fees" and awarding only a fraction of the damages sought).

None of this is to say that Plaintiffs lacked confidence in their claims. However, there is little doubt that continuing the litigation would have resulted in complex and costly proceedings, which would have significantly delayed relief to Class Members even if Plaintiff ultimately prevailed. ERISA 401(k) cases such as this "often lead[] to lengthy litigation." *Krueger v. Ameriprise Fin., Inc.*, 2015 WL 4246879, at *1 (D. Minn. July 13, 2015). Indeed, these cases can extend for a decade before final resolution, sometimes going through multiple appeals.[10] Given the risks,

---

[10] *See, e.g., See Fuller v. SunTrust Banks, Inc.*, No. 1:11-cv-00784, Dkt. 295-1 at 10-11 (N.D. Ga. June 5, 2020) ("Plaintiffs and their counsel persisted despite the denial of the administrative claim, the appeal of that claim, dismissal of two of the constituent cases, and one unsuccessful appeal to the Eleventh Circuit."); *Tussey v. ABB, Inc.*, 850 F.3d 951 (8th Cir. 2017) (recounting lengthy procedural history of case that was initially filed in 2006, and remanding to district court a second time); *Tibble v. Edison Int'l*, 2017 WL 3523737, at *15 (C.D. Cal. Aug. 16, 2017) (outlining remaining issues ten years after suit was filed in 2007).

cost, and delay of further litigation, it was reasonable and appropriate for Plaintiffs to reach a settlement on the terms that were negotiated. *See Henderson*, 2020 WL 9848975, at *6 ("The guaranteed recovery under the settlement outweighs the possibility of any future relief after such continued and lengthy litigation."); *In re the Home Depot, Inc., Customer Data Sec. Breach Litig.*, 2016 WL 6902351, at *6 ("[I]t is unclear whether future recovery at trial could achieve more than the relief made available in the Settlement. The early settlement of this case benefits the Settlement Class and weighs strongly in favor of final approval."); *Bennett v. Behring Corp.*, 76 F.R.D. 343, 349-50 (S.D. Fla. 1982) (stating that it would have been "unwise [for plaintiffs] to risk the substantial benefits which the settlement confers … to the vagaries of a trial"), *aff'd*, 737 F.2d 982 (11th Cir. 1984).

## 2.    Effectiveness of Distribution Method

The proposed method for distributing the Settlement proceeds to Class Members is fair, convenient, and effective. As noted above, Current Participants in the Plans will have their accounts automatically credited with their share of the Settlement Fund. *Settlement Agreement ¶ 6.5.* Former Participants also will receive an automatic payment (without the need to submit a claim form), either in the form of a check or in the form of a rollover to another qualified retirement account if they so elect and provide the necessary rollover information. *Id. ¶ 6.6.* This method of

distribution avoids negative tax consequences for Class Members, and is consistent with numerous other ERISA class action settlements that have received court approval. *See, e.g., Karpik*, 2021 WL 757123, at *2 (describing and approving same method of distribution); *Pledger v. Reliance Tr. Co.*, 2021 WL 2253497, at *4 (N.D. Ga. Mar. 8, 2021) ("*Pledger II*") (approving similar distribution method in which former participant class members were given the option of receiving a check or rollover, but were required to submit a claim form to receive payment).

### 3. Attorneys' Fees

The Settlement terms relating to attorneys' fees are also fair and reasonable. The amount of any fee award is reserved to the Court in its discretion. *Settlement Agreement ¶ 8.2*. And while the Settlement "does not purport to establish a presumptively reasonable amount" of fees, Class Counsel have agreed to limit any request for attorneys' fees to one-fourth of the Gross Settlement Amount. *Id.* This is less than the percentage typically awarded in complex ERISA cases such as this. *See Kruger v. Novant Health*, 2016 WL 6769066, at *2 (M.D.N.C. Sept. 29, 2016) ("[C]ourts have found that '[a] one-third fee is consistent with the market rate' in a complex ERISA 401(k) fee case such as this matter"); *Krueger*, 2015 WL 4246879, at *2 ("In such cases, courts have consistently awarded one-third contingent fees."); *see also, e.g.*, *Karpik*, 2021 WL 757123, at *7 (approving one-third fee to Nichols

Kaster, PLLP in ERISA class action); *Stevens v. SEI Invs. Co.*, 2020 WL 996418, at *13 (E.D. Pa. Feb. 28, 2020) (same); *Sims II*, 2019 WL 1995314, at *2 (M.D.N.C. May 6, 2019) (same); *Clark v. Oasis Outsourcing Holdings Inc.*, No. 18-81101, Dkt. 23 at ¶ 1 (S.D. Fla. Dec. 20, 2018) (same).

### 4. Other Agreements

The Settlement Agreement expressly states that "[t]his Settlement Agreement and the exhibits attached thereto constitute the entire agreement among the Settling Parties and no representations, warranties, or inducements have been made to any party concerning the Settlement other than those contained in this Settlement Agreement and the exhibits thereto." *Settlement Agreement ¶ 13.10.* Accordingly, there are no separate agreements bearing on the adequacy of relief to the Class. *See* Fed. R. Civ. P. 23(c)(2)(C)(iv).

### D. The Settlement Treats Class Members Equitably

Finally, the Settlement treats all Class Members equitably. The Settlement proceeds will be distributed to Class Members on a pro rata basis based on a common allocation formula. *See Settlement Agreement ¶ 6.4.2.* This allocation formula is carefully designed to account for both the recordkeeping rates that were charged to the Plans and any amounts that were deducted from Class Members' accounts in

excess of those rates during the Class Period. *See supra* at 5-6. This further supports approval of the Settlement.

## III. THE CLASS NOTICE PLAN IS REASONABLE AND SHOULD BE APPROVED

In addition to reviewing the substance of the proposed Settlement, the Court must ensure that notice is sent in a reasonable manner to all Class Members who would be bound by the Settlement. *See* Fed. R. Civ. P. 23(e)(1). The "best notice practicable" under Rule 23 specifically includes "individual notice to all class members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). That is precisely the type of notice proposed here.

The Settlement Agreement provides that the Settlement Administrator will provide direct notice of the Settlement to the Settlement Class via first class mail. *See Settlement Agreement ¶ 3.3.1.* This type of notice is presumptively reasonable. *See Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 812 (1985).

Moreover, the content of the Notices is also reasonable. The Notices include information regarding: (1) the nature of the claims; (2) the scope of the Settlement Class; (3) the terms of the Settlement; (4) the process for submitting Former Participant Rollover Forms (Former Participants only); (5) Class Members' right to object to the Settlement and the deadline for doing so; (6) the class release; (7) the identity of Class Counsel and the amount of compensation they will seek in

connection with the Settlement; (8) the amount of the proposed Class Representatives' Compensation; (9) the date, time, and location of the Fairness Hearing; and (10) Class Members' right to appear at the final approval hearing. *Id. Exs. 1-2.* This information is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *See Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

To the extent that Class Members would like further information, the Settlement Notices will be supplemented through the Settlement Website and telephone support line. *Settlement Agreement ¶¶ 3.3.1, 12.1, 12.2.* This further supports approval of the notice program. *See Pledger II*, 2021 WL 2253497, at *4 (approving notices that were supplemented by a settlement website and a call center); *Henderson,* 2020 WL 9848975, at *3 (approving notices that were supplemented by a settlement website).

## IV.    THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS

Finally, this Court should certify the Settlement Class for settlement purposes. In ERISA actions such as this, the criteria under Rule 23 are generally satisfied. *See Pizarro*, 2020 WL 6939810, at *4 ("An ERISA action is generally the type of action that satisfies those criteria."). This case is no exception. "Plaintiffs' claims are

straightforward excessive fee claims, the very sort that are routinely certified." *Id.* at*6.

A.      **The Proposed Settlement Class Satisfies Rule 23(a)**

Rule 23(a) sets forth four requirements applicable to all class actions: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997). Each of these requirements is met here.

***Numerosity.*** As noted above, there are approximately 101,000 Class Members. *See supra* at 4. This far exceeds the threshold for numerosity. *See Pizarro*, 2020 WL 6939810, at *7 ("'[W]hile there is no fixed numerosity rule,' classes of more than forty members presumptively satisfy numerosity.") (quoting *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986)).

***Commonality.*** The commonality requirement has been described as a "low hurdle," *see Pizarro*, 2020 WL 6939810, at *7 (quoting *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1356 (11th Cir. 2009)), and is routinely satisfied in ERISA cases such as this. *See In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 452 (S.D.N.Y. 2004) ("In general, the question of defendants' liability for ERISA violations is common to all class members because a breach of a fiduciary duty affects all participants and beneficiaries."). Here, as in other ERISA cases, there are

"clear common questions as to (1) whether the Defendants were Plan fiduciaries, (2) whether the fees charged [for recordkeeping] were excessive in relation to the market…, (3) whether the Defendants' conduct violated their fiduciary duties of loyalty and prudence, (4) whether the Plan suffered resulting losses, and if so, how to calculate those damages, and (5) the proper class-wide remedies for any breach found." *Pizarro*, 2020 WL 6939810, at *8. Accordingly, commonality is satisfied.

*Typicality*. The typicality requirement "tend[s] to merge" with the commonality requirement. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982). "Typicality is met when the "claims arise from the same event or pattern or practice and are based on the same legal theory as the claims of the class." *Pizarro*, 2020 WL 6939810, at *10. That is the situation presented here, as Plaintiffs "paid the same fees on the same fee schedule" as other Class Members in their Plan, and they "pursue the same theory that the fees were excessive." *Id.*

*Adequacy*. Plaintiffs and class counsel are adequate for the reasons discussed above. *See supra* at 12-14.

### B.     The Proposed Class Satisfies Rule 23(b)(1)

In addition to meeting the requirements of Rule 23(a), the proposed class also satisfies Rule 23(b)(1). Under Rule 23(b)(1), a class may be certified if prosecution of separate actions by individual class members would create a risk of:

(A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or

(B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests[.]

Fed. R. Civ. P. 23(b)(1). The claims here plainly satisfy this test because they are brought derivatively on behalf of the Plans under ERISA, *see* 29 U.S.C. §§ 1109 and 1132(a)(2), and the outcome will necessarily affect the participants in the Plans and the Plans' fiduciaries. For this reason, "[c]ourts in the Eleventh Circuit, including [the Northern District of Georgia], have found certification under Rule 23(b)(1) particularly appropriate in an ERISA fiduciary breach case, like the case here." *Pizarro*, 2020 WL 6939810, at *11 (collecting cases). Indeed, "ERISA litigation of this nature presents a paradigmatic example of a (b)(1) class." *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. at 453.[11]

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court preliminarily approve the settlement, certify the Settlement Class, and enter the accompanying proposed order.

---

[11] *See also Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 834 (1999) (noting that a breach of trust action is a "classic example" of a Rule 23(b)(1) class).

Respectfully Submitted,

Dated:  July 12, 2021                    **NICHOLS KASTER, PLLP**

s/Kai Richter
Paul J. Lukas, MN Bar No. 022084X*
Kai Richter, MN Bar No. 0296545*
Brock J. Specht, MN Bar No. 0388343*
Grace I. Chanin, MN Bar No. 0399969*
Patricia C. Dana, MN Bar No. 0400803*
* admitted *pro hac vice*
4700 IDS Center
80 S. 8th Street
Minneapolis, MN 55402
Telephone: 612-256-3200
Facsimile: 612-338-4878
lukas@nka.com
krichter@nka.com
bspecht@nka.com
gchanin@nka.com
pdana@nka.com

**AUSTIN & SPARKS, P.C.**
John T. Sparks, Sr., GA Bar No.669575
2974 Lookout Place N.E., Suite 200
Atlanta, GA 30305
Telephone: 404-869-0100
Facsimile: 404-869-0200
jsparks@austinsparks.com

**SANFORD LAW FIRM**
Josh Sanford*
* admitted *pro hac vice*
1 Financial Centre
650 S. Shackleford, Suite 411
Little Rock, AR 72211
Telephone: 501-221-0088
Facsimile: 888-787-2040
josh@sanfordlawfirm.com

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing document has been prepared in accordance with the font and point requirements of L.R. 5.1(C) of the United States District Court for the Northern District of Georgia, using 14-point Times New Roman font, as approved by the Court.

Dated:  July 12, 2021  <u>s/Kai Richter</u>
Kai Richter

## CERTIFICATE OF SERVICE

I hereby certify that on July 12, 2021, I caused a copy of the foregoing to be electronically filed with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

Dated:  July 12, 2021  <u>s/Kai Richter</u>
Kai Richter