**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| David Kinder, Tracy Scott, Elbert Peay, and Cherry Crawford, individually and as representatives of a class of similarly situated persons, and on behalf of the Georgia-Pacific LLC Hourly 401(k) Plan, the Georgia-Pacific LLC 401(k) Retirement Savings Plan, and the Koch Industries Inc. Employees' Savings Plan,<br><br>      Plaintiffs,<br>v.<br><br>Koch Industries, Inc., Koch Business Solutions, LP, the Koch Benefits Administrative Committee, and John Does 1-30,<br><br>      Defendants. | Case No. 1:20-cv-02973-MHC<br><br>**DECLARATION OF KAI RICHTER IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |

  I, Kai Richter, declare and state as follows:

  1.  I am a partner at Nichols Kaster, PLLP ("Nichols Kaster"), and am one of the attorneys of record for Plaintiffs in the above captioned action. I submit this declaration in support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement.

1

## **Settlement Terms**

2.     Attached hereto as **Exhibit A** is a true and correct copy of the proposed Class Action Settlement Agreement. The Settlement resolves Plaintiffs' class action claims against Koch Industries, Inc., Koch Business Solutions, LP, and the Koch Benefits Administrative Committee (collectively, "Defendants") regarding Defendants' administration and management of the Georgia-Pacific LLC Hourly 401(k) Plan, the Georgia-Pacific LLC 401(k) Retirement Savings Plan, and the Koch Industries Inc. Employees' Savings Plan, ("Plans").

3.     The Settlement Agreement applies to the following Class:

> All participants and beneficiaries of the Georgia-Pacific LLC Hourly 401(k) Plan, the Georgia-Pacific LLC 401(k) Retirement Savings Plan, and the Koch Industries Inc. Employees' Savings Plan at any time between July 16, 2014 and December 31, 2020.

*Settlement Agreement ¶ 2.44*. Based on information provided by the Plans' recordkeeper, there are approximately 101,000 Class Members.

4.     Under the terms of the proposed Settlement, a Gross Settlement Amount of $4 million will be paid to resolve the claims that were asserted in the Action. *Settlement Agreement ¶ 2.30*.[1] The Gross Settlement Amount represents

---

[1] The entirety of the Gross Settlement Amount shall be paid by Koch, with the exception of the portion of the Entitlement Amount paid to Settlement Class Members in connection with their Excess Deduction Score (discussed in paragraph 6 below), which may be paid out of the alleged excess amount that was retained in the Plans' trust account. *Settlement Agreement ¶ 2.30*.

approximately 25% to 40% of the alleged excess charges paid by the Class for recordkeeping services, depending on the benchmark used for purposes of calculating a reasonable recordkeeping rate.[2]

5. After accounting for any Attorneys' Fees and Costs, Administrative Expenses, and Class Representative Compensation approved by the Court, the Net Settlement Amount will be distributed to eligible Class Members in accordance with the Plan of Allocation in the Settlement. *Settlement Agreement ¶¶ 2.35, 5.9.*

6. Under the Plan of Allocation, a Settlement Allocation Score will be calculated for each Class Member, which shall be the sum of their Excess Deduction Score and Excess Recordkeeping Rate Score. *Id. ¶ 6.4.1*. The Excess Deduction Score represents the difference between the amount that was deducted by the trustee from Class Members' Plan accounts for recordkeeping services, and the amount that was actually paid out of the trust for recordkeeping services during the Class Period. *Id. ¶ 6.4.1.1; see also id. ¶¶ 2.18, 2.21*. The Excess Recordkeeping Rate Score represents the difference in the Base Recordkeeping Rate that was charged by the Plan's recordkeeper for recordkeeping services in 2014–2017 ($41), and the amount

---

[2] Plaintiffs used two models to calculate the allegedly excess charges. The first model was based on the rate that Fidelity stipulated to charging other plans in a different case, which yielded an alleged excess of $15.82 million. The second model was based on the bids that were received when Defendants renegotiated the Plans' recordkeeping contract in 2018, and yielded an alleged excess of $9.86 million.

that was charged after the recordkeeping contract was renegotiated in 2018 ($35). *Id. ¶ 6.4.1.2; see also id. ¶ 2.6.* Each Class Member will then receive a pro rata share of the Net Settlement Amount based on their Settlement Allocation Score in relation to other Class Members. *Id. ¶¶ 2.24, 6.4.2.*

7.  Current Participants will have their Plan accounts automatically credited with their Entitlement Amount. *Id. ¶ 6.5.* Former Participants will have the opportunity to submit a Rollover Form allowing them to have their distribution rolled over into an individual retirement account or other eligible employer plan. *Id. ¶ 6.6.* Former Participants who do not timely submit a Rollover Form will be sent a check. *Id.*

8.  In addition to the foregoing monetary compensation, the Settlement also provides that Defendants shall issue a new request for proposals for recordkeeping services for the Plans within 180 days of the Settlement Effective Date. *Id. ¶ 7.1.* This prospective relief is intended to ensure that the Plans are receiving the best possible rate for recordkeeping services going forward.

8.  In the absence of a settlement, Plaintiffs would have faced uncertainty and risk in connection with their claims. Given these risks (which are outlined in the accompanying Memorandum of Law), and the costs and potential delays associated with further litigation, I believe that the Settlement is fair, reasonable, and adequate.

## Case Proceedings

9.     Prior to filing the Complaint in this action, my colleagues and I conducted a thorough investigation of the claims that were asserted and the factual basis for those claims. As a result of our investigatory efforts, we were able to file a detailed, 30-page Complaint on July 16, 2020 (*Dkt. 1*). We subsequently filed a First Amended Complaint (*Dkt. 34*), Second Amended Complaint (*Dkt. 39*), and the operative Third Amended Complaint (*Dkt. 47*).

10.    On October 22, 2020, Defendants filed a motion to dismiss the Third Amended Complaint. *Dkt. 48*. Plaintiffs filed a memorandum of law in opposition to Defendants' motion on November 5, 2020 (*Dkt. 50*), to which Defendants replied on November 18, 2020 (*Dkt. 51*). Defendants' motion to dismiss remained pending at the time the Court stayed the litigation pending negotiation of the present Settlement. *See Dkt. 58, 60*.

11.    While Defendants' motion to dismiss was pending, the Parties engaged in early discovery to facilitate settlement discussions. In total, Defendants produced over 8,200 pages of documents, as well as several spreadsheets.

12.    Following production and review of these materials, the parties engaged in a mediation session with Martin F. Scheinman on April 13, 2021. Mr. Scheinman is an experienced and well-respected mediator, who has successfully

resolved numerous class action cases including several actions involving breach of fiduciary duty claims under ERISA. A copy of Mr. Scheinman's biography is attached as **Exhibit B**.

13. At the conclusion of the mediation, the parties reached a settlement-in-principle. The Settling Parties then negotiated the details of the comprehensive Settlement Agreement that is the subject of the present motion. For the reasons explained above, I believe the Settlement is fair, reasonable, and adequate.

## Professional Overview

14. I am licensed to practice law in the State of Minnesota, and also have been admitted to practice in several federal district courts and appellate courts across the country. A list of jurisdictions in which I have been admitted is set forth below:

| |
|---|
| Supreme Court of the United States |
| 1st Circuit Court of Appeals |
| 2nd Circuit Court of Appeals |
| 3rd Circuit Court of Appeals |
| 6th Circuit Court of Appeals |
| 8th Circuit Court of Appeals |
| 9th Circuit Court of Appeals |
| U.S.D.C. for the Eastern District of Michigan |
| U.S.D.C. Minnesota |
| U.S.D.C. Western District of New York |
| U.S.D.C. for the Eastern District of Wisconsin |
| Minnesota Supreme Court |

15. I have been actively engaged in the practice of law since 1999, and have substantial class action experience and other complex litigation experience. Since joining Nichols Kaster in April 2010, my practice has focused exclusively on class action cases. I have been appointed class counsel for litigation or settlement purposes in more than thirty class cases. In connection with those cases, I have personally negotiated class action settlements providing for more than $450 million in available relief to class members nationwide.

16. The principal types of cases that I have handled at Nichols Kaster are consumer class actions and ERISA class actions.

17. As a former leader of our firm's Consumer Class Action Team, I led class action litigation against several major financial institutions, including JPMorgan Chase, Bank of America, U.S. Bank, Wells Fargo, Citibank, GMAC Mortgage, RBS Citizens, and MidFirst Bank. For example, I successfully argued contested class certification motions in *Hofstetter v. Chase Home Finance, LLC*, 2011 WL 1225900 (N.D. Cal. Mar. 31, 2011) and *Ellsworth v. U.S. Bank, N.A.*, 2014 WL 2734953 (N.D. Cal. June 13, 2014), successfully argued before the First Circuit Court of Appeals in *Lass v. Bank of America, N.A.*, 695 F.3d 129 (1st Cir. 2012), and successfully argued and/or briefed dispositive motions in a number of other consumer class cases, including *Jackson v. Wells Fargo Bank, N.A.*, 2013 WL

7

5945732 (W.D. Pa. Nov. 7, 2013); *Leghorn v. Wells Fargo Bank, N.A.*, 950 F. Supp. 2d 1093 (N.D. Cal. 2013); *Casey v. Citibank, N.A.*, 915 F. Supp. 2d 255 (N.D.N.Y. 2013); *Berger v. Bank of America, N.A.*, 2013 WL 1164497 (D. Mass. Mar. 21, 2013); *Morris v. Wells Fargo Bank, N.A.*, 2012 WL 3929805 (W.D. Pa. Sept. 7, 2012); *Ulbrich v. GMAC Mortgage, LLC*, 2012 WL 3516499 (Aug. 15, 2012); *Walls v. JPMorgan Chase Bank, N.A.*, 2012 WL 3096660 (W.D. Ky. July 30, 2012); *Skansgaard v. Bank of America, N.A.*, 896 F. Supp. 2d 944 (W.D. Wash. 2011); and *Wulf v. Bank of America, N.A.*, 798 F. Supp. 2d 586 (E.D. Pa. June 27, 2011).

18.   I am currently co-leading our firm's ERISA Class Action Team. In addition to the present case, the firm's lawyers (including myself) have been appointed class counsel for litigation and/or settlement purposes in over twenty other breach of fiduciary duty cases involving retirement plans, as set forth below:

- *Andrus v. NY Life Ins. Co.*, No. 1:16-cv-05698 (S.D.N.Y.);

- *Baker v. John Hancock Life Ins. Co. (U.S.A.)*, No. 1:20-cv-10397 (D. Mass.);

- *Beach v. JPMorgan Chase Bank, N.A.*, No. 1:17-cv-00563 (S.D.N.Y);

- *Bhatia v. McKinsey & Co., Inc.*, No. 1:19-cv-01466 (S.D.N.Y.);

- *Brotherston v. Putnam Investments, LLC*, No. 1:15-cv-13825 (D. Mass.);

- *Clark v. Oasis Outsourcing Holdings Inc.*, No. 9:18-cv-81101 (S.D. Fla.);

- *In re M&T Bank Corp. ERISA Litig.*, No. 1:16-cv-00375 (W.D.N.Y.);

- *Intravaia v. Nat'l Rural Elec. Coop. Assoc.*, No. 1:19-cv-00973 (E.D. Va.);

- *Johnson v. Fujitsu Tech. & Bus. of America, Inc.*, No. 5:15-cv-03698 (N.D. Cal.);

- *Karpik v. Huntington Bancshares Inc.*, No. 2:17-cv-1153 (S.D. Ohio);

- *Kirk v. Ret. Comm. of CHS/Community Health Sys., Inc.*, No. 3:19-cv-00689 (M.D. Tenn.);

- *Larson v. Allina Heath Sys.*, No. 0:17-cv-03835 (D. Minn.);

- *Main v. American Airlines, Inc.*, No. 3:16-cv-01033 (N.D. Tex.);

- *Mass v. Regents of the Univ. of California*, No. RG17-879223 (Alameda County Super. Ct.);

- *Moitoso v. FMR LLC*, No. 1:18-cv-12122 (D. Mass.);

- *Moreno v. Deutsche Bank Americas Holding Corp.*, No. 1:15-cv-09936 (S.D.N.Y.);

- *Reetz v. Lowe's Co.*, No. 5:18-CV-00075 (W.D.N.C.);

- *Sims v. BB&T Corp.*, No. 1:15-cv-00732 (M.D.N.C.);

- *Stevens v. SEI Invs. Co.*, No. 2:18-cv-04205 (E.D. Pa.);

- *Toomey v. Demoulas Super Markets, Inc.*, No. 1:19-cv-11633 (D. Mass);

- *Urakhchin v. Allianz Asset Mgmt. of America, L.P.*, No. 8:15-cv-01614 (C.D. Cal.);

9

- *Velazquez v. Massachusetts Fin. Servs. Co.*, No. 1:17-cv-11249 (D. Mass.); and

- *Wildman v. American Century Servs., LLC*, No. 4:16-cv-00737 (W.D. Mo.).

19. Our firm took the *Putnam*, *American Century*, and *Lowe's* cases to trial. We received final court approval of settlements in *New York Life*, *JPMorgan Chase*, *McKinsey & Co.*, *Putnam*, *Oasis Outsourcing*, *M&T*, *National Rural Electric Cooperative Association* ("NRECA"), *Fujitsu*, *Huntington Bank*, *CHS/Community Health Systems*, *Allina*, *American Airlines*, *FMR LLC* (also known as Fidelity), *Deutsche Bank*, *BB&T*, *SEI*, *Demoulas Super Markets*, *Allianz*, and *Massachusetts Financial Services*. We won contested class certification motions in *JPMorgan Chase*, *Putnam*, *University of California*, *Deutsche Bank*, *BB&T*, *Allianz*, and *American Century*, and reached stipulations concerning class certification in our cases with *John Hancock*, *Fidelity*, *Massachusetts Financial Services*. We also defeated motions to dismiss in many of these cases in whole or in part, including *John Hancock*, *JPMorgan Chase*, *Putnam*, *M&T*, *NRECA*, *Fujitsu*, *Huntington Bank*, *American Airlines*, *University of California*, *Deutsche Bank*, *Lowe's*, *BB&T*, *Demoulas Super Markets*, *Allianz*, *Massachusetts Financial Services*, and *American Century*, as well as in *Morin v. Essentia Health*, 2017 WL 4083133 (D. Minn. Sept. 14, 2017), *report and recommendation affirmed,* 2017 WL 4876281 (D. Minn. Oct.

27, 2017), *Nelsen v. Principal Global Investors Trust Company*, 362 F. Supp. 3d 627 (S.D. Iowa 2019), *Davis v. Stadion Money Management*, 2020 WL 1248580 (D. Neb. March 16, 2020), *Falberg v. The Goldman Sachs Group*, 2020 WL 3893285 (S.D.N.Y. July 9, 2020), *Stark v. Keycorp*, 1:20-cv-01254, Dkt. 24 (N.D. Ohio May 4, 2021), and this case.

20. The firm is viewed as a leader in ERISA 401(k) cases. Attorneys from Nichols Kaster have been interviewed by National Public Radio's "All Things Considered", the Wall Street Journal, Bloomberg, Financial Times, Investment News, Pensions & Investments, Bankrate.com, and several trade publications in connection with their ERISA work. I also have spoken by invitation at several national conferences and seminars on ERISA litigation, including: (1) an American Law Institute webcast on the current state of retirement plan litigation (October 22, 2020); (2) a webinar on "Fee Litigation" sponsored by the American Bar Association (November 12, 2019); (3) an employee benefits program sponsored the American Law Institute (October 24, 2019); (4) a Professional Liability Directors & Officers conference on a panel regarding "Plan Fee Litigation" (February 6, 2019); (5) an American Bankers Association Insurance Risk Management Conference on a panel concerning excessive fee ERISA class actions (February 5, 2019); (6) an American Law Institute webcast on excessive fee litigation (November 28, 2018); (7) the

11

American Law Institute's tax-exempt and government plans education series (September 24, 2018), where I co-presented on "The Current State of Fee Litigation and Its Implications"; (8) the American Conference Institute's National Forum on ERISA Litigation (on both March 1, 2017 and November 2, 2017), where I was a member of the "Fiduciary Investment Litigation Update" panel; and (9) the Retirement Advisor Council's annual meeting (May 22, 2018), where I was a member of a panel on "The Moving Litigation Frontier."

21.  Prior to joining Nichols Kaster, I served as the Manager of the Complex Litigation Division of the Office of the Minnesota Attorney General. During my tenure there (from February 2008 to March 2010), I supervised and handled a large number of complex matters. For example, in June and September of 2009, I co-chaired a three-week trial involving claims for fraudulent sales of annuities and legal plans to over 1,200 Minnesota senior citizens, which ultimately resulted in a favorable judgment from the trial court. In addition, I handled a significant consumer enforcement action against Sprint Nextel related to wrongfully imposed contracts and termination fees, which resulted in a comprehensive settlement in October of 2009.

22.  I also had significant prior class action experience in private practice, including two multi-week class action trials: a statewide wage and hour class action

against Wal-Mart Stores in Minnesota (tried in 2007) and a landmark class action against the University of Michigan Law School. *See Grutter v. Bollinger*, 539 U.S. 306 (2003).

23. I received my law degree from the University of Minnesota Law School in 1999, and my B.A. from Dartmouth College in 1995.

## Law Firm Overview

24. Nichols Kaster has been engaged in the practice of law for over 30 years, and is devoted to representing the interests of both consumers and employees. The firm has offices in Minneapolis and San Francisco, and currently employs 39 attorneys and a sizeable staff of paralegals, legal assistants, class action clerks, and information technology professionals.

25. Nichols Kaster has extensive class action and collective action experience. The firm has been appointed lead counsel or co-counsel on hundreds of class and collective actions, and has recovered over $750 million for its clients.

26. Nichols Kaster was named one of the top 50 elite trial firms by National Law Journal in September 2014, and also has been ranked as a Best Law Firm by U.S. News and World Report. In addition, Nichols Kaster has received praise from numerous courts for its work. The firm's lawyers have litigated dozens of cases through trial, and have managed discovery in cases involving millions of pages of

documents. The firm is also well regarded for its appellate work, and has been involved in two successful appeals before the United States Supreme Court, *Perez v. Mortgage Bankers Ass'n*, 575 U.S. 92 (2015) and *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1 (2010).

27. Based on my personal experience and Nichols Kaster's firm-wide experience litigating ERISA cases, I believe that we were well-equipped to negotiate the Settlement that was reached in this case. For further background, a copy of our firm resume is attached as **Exhibit C**.

### Settlement Administrator

28. Analytics Consulting, LLC ("Analytics") has been selected to serve as the settlement administrator in this matter. Analytics has extensive experience administering class action settlements, including several ERISA settlements, and previously served as the Settlement Administrator in connection with the *Pledger* and *Henderson* settlements in this district and other settlements within this Circuit. *See Pledger v. Reliance Tr. Co.*, 2020 WL 9849019, at *2 (N.D. Ga. Oct. 14, 2020); *Henderson v. Emory Univ.*, 2020 WL 9848976, at *2 (N.D. Ga. June 11, 2020); *see also, e.g.*, *Clark*, No. 9:18-cv-81101, Dkt. 11 (S.D. Fla. Aug. 21, 2018). A copy of Analytics' company profile is attached as **Exhibit D**.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: July 12, 2021                                s/Kai Richter
                                                    Kai Richter

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing document has been prepared in accordance with the font type and margin requirements of Local Rule 5.1(C) of the United States District Court for the Northern District of Georgia, using 14-point Times New Roman font, as approved by the Court.

Dated: July 12, 2021                                s/Kai Richter
                                                    Kai Richter

## CERTIFICATE OF SERVICE

I hereby certify that on July 12, 2021, I caused a copy of the foregoing to be electronically filed with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

Dated:  July 12, 2021                               s/Kai Richter
                                                    Kai Richter