IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DAVID KINDER, TRACY SCOTT,
ELBERT PEAY, and CHERRY
CRAWFORD,  Individually and as
Representatives of a Class of
Similarly Situated Persons, and on
behalf of the Georgia-Pacific LLC
Hourly 401(k) Plan, the Georgia-
Pacific LLC 401(k) Retirement
Savings Plan, and the Koch
Industries Inc. Employees' Savings
Plan,

      Plaintiffs,

v.

KOCH INDUSTRIES, INC., KOCH
BUSINESS SOLUTIONS, LP, THE
KOCH BENEFITS
ADMINISTRATIVE COMMITTEE
and JOHN DOES 1-30,

      Defendants.

CIVIL ACTION FILE

NO. 1:20-CV-2973-MHC

## ORDER GRANTING FINAL APPROVAL OF
## CLASS ACTION SETTLEMENT, AND AWARDING ATTORNEYS' FEES
## AND COSTS, ADMINSTRATIVE EXPENSES,
## AND CLASS REPRESENTATIVE AWARDS

On July 12, 2021, Plaintiffs and Defendants executed a proposed class action

settlement resolving all of Plaintiffs' claims in the above-styled lawsuit.  Class

Action Settlement Agreement ("Settlement Agreement") [Doc. 67-3].[1]   On July

30, 2021, this Court issued an order for preliminary approval of the Settlement

Agreement and directed that notice issue to the settlement class.   July 30, 2021,

Order ("Preliminary Approval Order") [Doc. 69].   This case is before the Court on

Plaintiffs' Motion for Final Approval of Class Action Settlement [Doc. 71] and

Plaintiffs' Motion for Attorneys' Fees and Costs, Administrative Expenses, and

Class Representative Service Awards ("Pls.' Mot. for Fees, Costs, Expenses and

Awards") [Doc. 70].   For the reasons set forth below, and after considering the

entire record and the record of the Fairness Hearing held on December 9, 2021, the

Court hereby orders as follows.

## I.   BACKGROUND

This litigation involves claims of alleged breaches of fiduciary duties under

the Employee Retirement Income Security Act of 1974, as amended ("ERISA"),

29 U.S.C. §§ 1001-1461, which were asserted against Defendants Koch Industries,

Inc., Koch Business Solutions, LP, and the Koch Benefits Administrative

Committee ("Defendants") relating to the management of the Georgia-Pacific LLC

---

[1] For purposes of this Order, except as otherwise defined herein, all capitalized
terms used herein shall have the same meaning as ascribed to them in the
Settlement Agreement.

Hourly 401(k) Plan, the Georgia-Pacific LLC 401(k) Retirement Savings Plan, and

the Koch Industries Inc. Employees' Savings Plan (collectively, the "Plans").

Plaintiffs filed their Complaint on July 16, 2020 [Doc. 1] and subsequently

filed amended complaints on September 30, 2020 [Doc. 34], October 9, 2020 [Doc.

39] and October 16, 2020 ("Third Am. Compl.") [Doc. 47]. The Third Amended

Complaint, which is the operative complaint in this case, names as defendants

Koch Industries, Inc., Koch Business Solutions, LP, and the Koch Benefits

Administrative Committee, and asserts claims against those entities under ERISA

in relation to the management of the Plans. Third Am. Compl. ¶¶ 1, 22-31.

Specifically, Plaintiffs allege that Defendants (1) breached their duties of loyalty

and prudence (Count I); and (2) failed to monitor fiduciaries (Count II). Id. ¶¶ 62-

75.

## II.    TERMS OF THE SETTLEMENT

### A.    The Settlement Class

The Settlement Class is defined as "[a]ll participants and beneficiaries of the

Georgia-Pacific LLC Hourly 401(k) Plan, the Georgia-Pacific LLC 401(k)

Retirement Savings Plan, and the Koch Industries Inc. Employees' Savings Plan at

any time between July 16, 2014 and December 31, 2020." Preliminary Approval

3

Order at 3.  There are 100,994 members of the Settlement Class.  Decl. of Jeffrey

Mitchell (Nov. 22, 2021) ("Mitchell Decl.") [Doc. 71-4] ¶ 8.

**B.      The Settlement Amount**

Under the terms of the Settlement Agreement, a Gross Settlement Amount

of $4 million will be paid by Koch Industries, Inc. (with the exception as stated in

the Settlement Agreement) to resolve all of the claims of Class Members (the

"Settlement Fund").  Settlement Agreement § 2.30.  After accounting for any

attorneys' fees and costs, administrative expenses, and service awards approved by

the Court, the Net Settlement Amount will be distributed according to the Plan of

Allocation which is detailed in the Settlement Agreement.  Id. §§ 2.35, 5.9.

Current Participants will have their Plan accounts automatically credited with their

Entitlement Amount.  Id. § 6.5.  Former Participants have to submit a Former

Participant Rollover Form allowing them to have their distribution rolled over into

an individual retirement account or other eligible employer plan.  Id. § 6.6.  Former

Participants who do not timely submit a Former Participant Rollover Form will

receive his or her settlement payment by check.  Id.  § 6.6.2.  Any uncashed checks

will be paid into the Plans for the purpose of defraying administrative fees and

expenses of the Plans.  Id. §§ 6.10, 6.11.

## C.   Class Notice

Pursuant to the Court's Preliminary Approval Order, Analytics Consulting, LLC ("Analytics"), mailed Notices of Settlement to each of the 100,994 Settlement Class Members identified by the Plans' recordkeeper.  Mitchell Decl. ¶ 8.  Prior to sending Notices to Class Members, Analytics cross-referenced the addresses on the class list with the United States Postal Service National Change of Address Database.  Id. ¶ 7.  In the event that any Notices were returned, Analytics re-mailed the Notice to any forwarding address that was provided, and performed a skip trace in an attempt to ascertain a valid address for the Class Member in the absence of a forwarding address.  Id. ¶¶ 10-11.  Out of 100,994 Notices that were mailed, only 1.15% were ultimately undeliverable.  Id. ¶ 12.

If any Class Members desired further information, Analytics established a Settlement Website at www.KochERISASettlement.com.  Id. ¶ 13.  Among other things, the Settlement Website includes: (1) a "Frequently Asked Questions" page containing a clear summary of essential case information; (2) a "Home" page and "Important Dates" page, each containing clear notice of applicable deadlines; (3) case and settlement documents available for download; (4) contact information for Class Counsel and Defendants' Counsel; and (5) email, phone, and U.S. mail contact information for Analytics.  Id.  Analytics also created and maintained a

toll-free telephone support line as a resource for Class Members seeking additional information. Id. ¶ 14. This telephone number was referenced in the Notices, and also appears on the Settlement Website. Id.

The deadline to submit objections to the Settlement Agreement was November 18, 2021. See Preliminary Approval Order at 6-7. No objections were received by Analytics or any of the Settling Parties, and none have been filed with the Court. See Mitchell Decl. ¶ 15.

## D. Review and Approval by Independent Fiduciary

Pursuant to Paragraph 3.1 of the Settlement Agreement and applicable ERISA regulations, the Settlement Agreement was submitted to an Independent Fiduciary (Fiduciary Counselors, Inc.) for review following the Court's Preliminary Approval Order. See Report of the Independent Fiduciary [Doc. 71-3]. After reviewing the Settlement Agreement and numerous case documents, and interviewing counsel for each of the Settling Parties, the Independent Fiduciary concluded, among other things, that (1) "The Settlement terms, including the scope of the release of claims, the amount of cash received by the Plans, and . . . sums to be paid from the recovery, are reasonable in light of the Plans' likelihood of full recovery, the risks and costs of litigation, and the value of claims forgone;" (2) "The terms and conditions of the transaction are no less favorable to the Plans

than comparable arm's-length terms and conditions that would have been agreed to by unrelated parties under similar circumstances;" (3) "The transaction is not part of an agreement, arrangement or understanding designed to benefit a party in interest;" and (4) the requested attorneys' fees, litigation expenses, administrative expenses, and service awards are "reasonable," and "within the range of similar awards in other ERISA cases." Id. The Independent Fiduciary "approve[d] and authorize[d] the Settlement on behalf of the Plans," and indicated that it did not have any objections to "any aspect of the Settlement." Id.

### E. Attorneys' Fees, Litigation Expenses, Settlement Administration Expenses, and Class Representative Awards

Class Counsel have applied for a percentage-based attorneys' fee of $1,000,000.00 (one-fourth of the monetary recovery), reimbursement of $17,658.77 in litigation expenses, settlement administration expenses in the amount of $209,532.00, and Class Representative awards of $5,000.00 for each of the four Class Representatives. Pls.' Mot. for Fees, Costs, Expenses and Awards at 2. These amounts are in accordance with the terms of the Settlement Agreement. For the reasons more fully set forth below, the requests for attorneys' fees, litigation expenses, settlement administration expenses, and Class Representative awards will be approved.

III.    **FINAL APPROVAL OF PROPOSED SETTLEMENT**

After consideration of the Settlement Agreement, the arguments and authorities presented by the parties, the arguments at the Fairness Hearing on December 9, 2021, and the entire record in this case, the Court reaffirms its findings in the Preliminary Approval Order and finds that Settlement Agreement is fair and reasonable.

"[I]n order to approve a settlement, the district court must find that it 'is fair, adequate and reasonable and is not the product of collusion between the parties.'" Bennett v. Behring Corp., 737 F.2d 982, 986 (11th Cir. 1984) (quoting Cotton v. Hinton, 559 F.2d 1326, 1330 (5th Cir. 1977)).  In addition, the United States Court of Appeals for the Eleventh Circuit has directed district courts to consider the following factors:

> (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.

Id.

In this case, the Court finds that it is entirely possible that Plaintiffs would not have prevailed on establishing liability on the part of Defendants at trial.  The questionable likelihood of success also affects the possible range of recovery

8

because, even if Plaintiffs prevailed on liability with respect to one or both claims, they would not be assured of a recovery to the full extent of claimed damages. This case was complex, expensive, and time-consuming which, when combined with the uncertainty of recovery, meant that the range of possible recovery included amounts far less than those agreed to in the Settlement Agreement. In addition, even assuming that Plaintiffs succeeded in establishing liability and recovered all damages sought, the case could have undergone a protracted appellate process with an affirmance of the district court's decision far from certain. Finally, the fact that no Class Member filed any objection to the Settlement Agreement is a strong indicator as to its adequacy. All of the Bennett factors weigh in favor of granting final approval.

The Court also finds that the terms of the Settlement Agreement are fair, reasonable, and adequate within the meaning of Federal Rule of Civil Procedure 23(e)(2). The Class Representatives and Class Counsel have adequately represented the Class. The interests of the Class Representatives are aligned with those of the other members of the Class because they are all participants in the Plans during the relevant time period. The Settlement Agreement was not the product of fraud or collusion but negotiated at an arms-length negotiation. The relief provided to the class is adequate, taking into account the complexity of the

case and the likelihood of a protracted appeal regardless of the Court's decision after trial.

Based on the foregoing, the Court hereby finally **APPROVES** in all respect the Settlement Agreement, and finds that the Settlement Agreement and the plan for distribution of the Settlement Fund are in all respects fair, reasonable, and adequate, and are in the best interest of the Class Members.

## IV.   ATTORNEYS' FEES, LITIGATION EXPENSES, SETTLEMENT ADMINISTRATION EXPENSES, AND CLASS REPRESENTATIVE AWARDS

The Court hereby **GRANTS** to Class Counsel a fee in the amount of $1,000,000.00, litigation expenses in the amount of $17,658.77, settlement administration expenses in the amount of $209,532.00, and Class Representative awards of $5,000.00 for each of the four Class representatives, which the Court finds to be fully supported by the facts and applicable law. These amounts shall be paid from the Settlement Fund.

### A.   Attorneys' Fees

The Court finds that the Settling Parties' agreement with regard to the payment of fees was not negotiated while they were negotiating the other terms of the Settlement Agreement and that the agreement with regard to the payment of fees and expenses was not the product of collusion or fraud. The requested

10

attorneys' fee is justified under the percentage of the common fund approach

adopted by the Eleventh Circuit in <u>Camden I Condo. Ass'n, Inc. v. Dunkle</u>, 946

F.2d 768 (11th Cir. 1991).  The fee represents one-fourth of the $4 million

settlement.  In approving the requested fee, the Court has carefully considered the

factors listed in <u>Camden I</u>, including the time and labor involved; the novelty and

difficulty of the questions involved; the skill needed to perform the services

properly; the preclusion of other employment; the customary fee; the fact that the

fee was entirely contingent on a successful outcome; the time limitations imposed

by the circumstances; the amount involved and the results obtained; the

experience, reputation and ability of the attorneys; awards in similar cases; the

absence of objections by Class Members; the risks undertaken by Class Counsel;

the economics involved in prosecuting class actions; and the other relevant

circumstances.  The record shows that all of these factors support the requested fee.

### 1.      The Time and Labor Required

The Court has observed the significant amount of time and labor required to

prosecute the claims in this case.  Class Counsel spent considerable time

prosecuting this action from its investigative stage, through the drafting and filing

of the Complaint and amended complaints, responding to Defendants' motion to

dismiss, engaging in discovery, drafting a mediation statement, participating in the

mediation, and consulting with the Class Representatives throughout the course of litigation.  See Decl. of Kai Richter (Oct. 19, 2021) ("Richter Fee Decl.") [Doc. 70-2] ¶ 18.  The Court finds that the work that Class Counsel have done is justified in view of the issues, the complexity and importance of the case, the manner in which the case was defended, the quality and sophistication of Class Counsel, the result, and the magnitude of the settlement.  This factor weighs in favor of Plaintiffs' fee request.

### 2.    The Novelty and Difficulty of the Relevant Questions

"ERISA litigation of this type is a rapidly evolving, complex, and demanding area of the law."  In re BellSouth Corp. ERISA Litig., No. 1:02-CV-2440-JOF, 2006 WL 8431178, at *7 (N.D. Ga. Dec. 5, 2006).  Effectively and successfully litigating an ERISA breach of fiduciary action requires a specialized knowledge and expertise that was demonstrated by Class Counsel.  This litigation involved highly technical knowledge of investment plans, investment knowledge, and industry practices.  The difficulty of the questions posed is borne out by recent decisions that have been decided against claims of breach of fiduciary duties.  See, e.g., Cunningham v. Cornell Univ., No. 16-cv-6525, 2019 WL 4725876, at *18 (S.D.N.Y. Sept. 19, 2019) (granting summary judgment for the defendants and rejecting allegations of a breach of fiduciary duty with respect to retail share class

funds); <u>Divane v. Nw. Univ.</u>, No. 16 C 8157, 2018 WL 2388118, at *7-11 (N.D.

Ill. May 25, 2018) (granting motion to dismiss breach of fiduciary claims related to

change in investment options for ERISA-defined contribution plans), <u>aff'd</u>, 953

F.3d 980 (7th Cir. 2020).  This factor weighs in favor of Plaintiffs' fee request.

### 3. The Skill Needed to Perform the Services Properly and the Experience, Reputation, and Ability of the Lawyers

This case required a high level of experience and skill.  Class Counsel are

highly experienced and recognized experts in ERISA litigation.  Lead Counsel in

this case, Nichols Kaster, PLLP, has been recognized as "one of the relatively few

firms in the country that has the experience and skills necessary to successfully

litigate a complex ERISA action."  <u>Karpik v. Huntington Bancshares Inc.</u>, No.

2:17-CV-1153, 2021 WL 757123, at *9 (S.D. Ohio Feb. 18, 2021).  Class

Counsel's unique experience representing plaintiffs like Class Members in this

case supports Plaintiffs' fee request.

### 4. The Preclusion of Other Employment and the Time Limitations Imposed by the Circumstances

But for the time and effort they spent in this case, and given the demand for

their services attributable to their high level of skill and competence, Plaintiffs'

attorneys would have spent significant time on other matters.  Class Counsel was

compelled at various times during the litigation to work under significant time

pressure and had to commit significant resources.  These factors weigh in favor of the requested fee.

### 5.    The Customary Fee and Whether the Fee is Fixed or Contingent

A contingency fee often justifies a larger award of attorneys' fees because, if the case is lost, an attorney realizes no return for investing large amounts of time and resources in the case.  In re Friedman's, Inc. Sec. Litig., No. 1:03-cv-3475-WSD, 2009 WL 1456698, at *3 (N.D. Ga. May 22, 2009).  And, the percentage used to calculate the requested fee in this case (25%), is less than the 33%, which is "consistently recognized" as the "market rate."  Pledger v. Reliance Tr. Co., No. 1:15-CV-4444-MHC, 2021 WL 2253497, at *8 (N.D. Ga. Mar. 8, 2021).  Class Counsel's requested fee is justified by their substantial work in this case.  The Court finds this factor weighs in favor of the requested fee.

### 6.    The Amount Involved and the Results Obtained

Class Counsel obtained a substantial award for the Class, representing 25% to 40% of the alleged excess charges paid by the Class for recordkeeping services, depending on the benchmark used for purposes of calculating a reasonable recordkeeping rate.  See Decl. of Kai Richter (July 12, 2021) [Doc. 67-2] ¶ 4. "Furthermore, most Class Members will not have to file a claim form but will automatically receive their distributions into their tax-deferred retirement

accounts." <u>Pledger</u>, 2021 WL 2253497, at *8.  Additionally, Defendants have agreed to meaningful prospective relief which presumably addresses "some of the problems that necessitated the filing of this lawsuit originally."  <u>In re BellSouth</u>, 2006 WL 8431178, at *8.  This factor weighs in favor of the requested fee.

### 7.    Fee Awards in Similar Cases

"In similar ERISA excessive fee cases, and in particular those brought by Class Counsel [the same as in this case], district courts have consistently recognized that a one-third fee is the market rate."  <u>Kelly v. Johns Hopkins Univ.</u>, No. 1:16-CV-2835-GLR, 2020 WL 434473, at *3 (D. Md. Jan. 28, 2020); <u>see also</u> <u>Sims v. BB&T Corp.</u>, Nos. 1:15-CV-732 & 1:15-CV-841, 2019 WL 1993519, at *2 (M.D.N.C. May 6, 2019) ("A one-third fee is consistent with the market rate in complex ERISA matters such as this and reflects a customary fee for like work."). In this case, the fee award is less than the recognized market rate.  This factor weighs in favor of the fee request in this case.

### 8.    The Absence of Objections By Class Members

No Class Member objected to the requested fee, which weighs in favor of the fee request in this case.

### 9.    The Risks Undertaken by Class Counsel

Given the time and effort required to litigate this case, and the previously discussed difficulty and uncertainty in obtaining a successful result, Class counsel, in agreeing to a contingent fee, undertook an extraordinary litigation risk of nonpayment.

The Court finds that all of the Camden I factors support the requested attorneys' fee of $1,000,000.00, which shall be paid out of the Settlement Fund.

### B.    Expenses of Litigation and Settlement Administration Expenses

Under Rule 23(h) of the Federal Rules of Civil Procedure, a trial court may award nontaxable costs that are authorized by law or the parties' agreement.  FED. R. CIV. P. 23(h).  Class Counsel have submitted evidence in support of their request for reimbursement of $17,658.77.  Richter Fee Decl. ¶ 26.  In addition, Class Counsel request $209,532.00 for the services of the Settlement Administrator, the Escrow Agent, and the Independent Fiduciary.  Pls.' Mem. of Law in Supp. of Mot. for Attys' Fees [Doc. 70-1] at 18.  The Court finds that these expenses are reasonable and necessarily incurred on behalf of the Class Members, and shall be paid out of the Settlement Fund.

**C.     Class Representative Awards**

The Settlement Agreement provides for the payment in an amount not to exceed $5,000 for each of the four Class Representatives in this case, to be recovered from the Settlement Fund.  Settlement Agreement § 8.2.

Prior to September 17, 2020, courts in this circuit routinely approved incentive awards to compensate class representatives for the services they provide and the risks they incur on behalf of the Class.  See, e.g., Ingram, 200 F.R.D. at 695-96.  On that date, the Eleventh Circuit decided Johnson v. NPAS Sols., 975 F.3d 1244 (11th Cir. 2020)[2], in which the court held that "[a] plaintiff suing on behalf of a class . . . cannot be paid a salary or be reimbursed for his personal expenses."  Id. at 1257.  In Johnson, the Eleventh Circuit was presented with a class action settlement arising out of alleged violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, that included an incentive payment to the class representative.  After reviewing the Nineteenth Century precedents of Trustees v. Greenough, 105 U.S. 527 (1882) and Cent. R.R. & Banking Co. v. Pettus, 113 U.S. 116 (1885), the court found that these two cases "prohibit the type

---

[2] A petition for *en banc* review is pending in Johnson, and a judge of the Eleventh Circuit has withheld issuance of the mandate.  Order, Johnson v. NPAS Sols., No. 18-12344 (entered for the court Nov. 9, 2020) (withholding issuance of the mandate in the appeal); Pet. for Reh'g or for Reh'g En Banc, Johnson v. NPAS Sols., No. 18-12344 (filed Oct. 22, 2020).

of incentive award that the district court approved here—one that compensates a class representative for his time and rewards him for bringing a lawsuit." <u>Johnson</u>, 975 F.3d at 1260.

This Court has reviewed both <u>Greenough</u> and <u>Pettus</u> and finds that those factual settings are distinguishable from this case.  The Eleventh Circuit characterized the incentive award in the TCPA case as "part salary and part bounty" which creates a conflict between the plaintiff and other class members.  <u>Id.</u> at 1258.  However, unlike <u>Greenough</u> and <u>Pettus</u>, the Class Representatives in this case were not promised a "bonus" or "salary," but undertook a considerable risk of alienation and harm to their reputations for seeking to enforce their rights under ERISA.  But for their service and willingness to accept this risk, the Class Members would have received nothing.  Another judge of this district also has approved incentive fee awards in an ERISA case for the same reasons:

> The court finds that this award is not of the type prohibited in [<u>Greenough</u> and <u>Pettus</u>].  The Class Representatives, employees of the Defendants, faced considerable risk in pursuing this lawsuit.  The award does not constitute either a salary or a bounty.  Furthermore, the settlement agreement in this action is not contingent on the Class Representatives receiving an award.  The Class Representatives were integral to achieving the settlement which in turn benefits the entire class.  Without them, the class members would receive nothing and their retirement plans would not have been adjusted.

<u>Henderson v. Emory Univ.</u>, No. 16-2920-CAP, 2020 WL 9848978, at *5 (N.D. Ga. Nov. 4, 2020).

Therefore, the Court approves the payment of $5,000 to each of the four named Class Representatives from the Settlement Fund.

## V.      DISMISSAL AND FINAL JUDGMENT

Plaintiffs' Motion for Final Approval of Class Action Settlement is hereby **GRANTED**, the Settlement of the Litigation is **APPROVED** as fair, reasonable, and adequate as to the Georgia-Pacific LLC Hourly 401(k) Plan, the Georgia-Pacific LLC 401(k) Retirement Savings Plan, and the Koch Industries Inc. Employees' Savings Plan (the "Plans") and the Settlement Class, and the Court orders that the Settling Parties are hereby directed to take the necessary steps to effectuate the terms of the Settlement Agreement.  The Court finds that it has subject matter jurisdiction over the claims herein and personal jurisdiction over the Class Members herein pursuant to the provisions of ERISA, and expressly retains that jurisdiction for purposes of enforcing this Order and the Settlement Agreement.

The Court further finds that Notices of the Settlement were timely distributed by first-class mail to all Class Members who could be identified with reasonable effort.  The Settlement Administrator used commercially reasonable

efforts to locate any Class Member whose Settlement Notice was returned, and re-mailed notices to those Class Members.  The form and methods of notifying the Class Members of the terms and conditions of the proposed Settlement Agreement met the requirements of Federal Rule of Civil Procedure 23(c)(2) and (e), and due process, and constituted the best notice practicable under the circumstances.  Due and sufficient notice of the Fairness Hearing and the rights of all Class Members have been provided consistent with Federal Rule of Civil Procedure 23 and due process.  In addition, notice was provided to the Attorneys General for each of the states in which a Class Member resides and the Attorney General of the United States pursuant to the Class Action Fairness Act ("CAFA"), 29 U.S.C. § 1711, *et seq.*  All requirements of CAFA have been met.

The Court further finds that Class Members had the opportunity to be heard on all issues regarding the resolution and release of their claims by submitting objections to the Settlement Agreement to the Court, but no Class Member submitted an objection.

The Action and all Released Claims asserted therein, whether asserted by the Class Representatives on their own behalf or on behalf of the Class Members, or derivatively on behalf of the Plans, are **DISMISSED WITH**

**PREJUDICE**, without costs to any of the Settling Parties other than as provided for in the Settlement Agreement.

The Class Representatives and each Class Member and their respective heirs, Alternate Payees, beneficiaries, executors, administrators, estates, past and present partners, agents, attorneys, predecessors, successors, and assigns ("Class Releasors"), shall as of the Effective date of the Settlement Agreement be (i) conclusively deemed to have fully, finally, and forever settled, released, relinquished, waived, and discharged Defendants, the Plans, and the Released Parties from all Released Claims, and (ii) barred and enjoined from suing Defendants, the Plans, or the Released Parties in any action or proceeding (including, but not limited to, the making of any complaints or claims or inquiries to any administrative department or agency) alleging any of the Released Claims, even if any Class Member or Class Releasor may thereafter discover facts in addition to or different from those which the Class Member or Class Counsel now know or believe to be true with respect to the Action and the Released Claims.

The Plans, and any person acting on behalf of such Plans (including any fiduciaries, trustees, administrators, agents, attorneys, participants and assigns) shall as of the Effective date of the Settlement be (i) conclusively deemed to have, and by operation of this Final Approval Order shall have, fully, finally, and forever

settled, released, relinquished, waived, and discharged Defendants and the

Released Parties from all Released Claims, and (ii) barred and enjoined from suing

Defendants or the Released Parties in any action or proceeding (including, but not

limited to, the making of any complaints or claims or inquiries to any

administrative department or agency) alleging any of the Released Claims, even if

the Plans or any Class Member or other person on behalf of the Plans may

thereafter discover facts in addition to or different from those which the Plans or

any Class Member now knows or believes to be true with respect to the Action and

the Released Claims.

 The Class Representatives, Class Members, and the Plans shall settle,

release, relinquish, waive and discharge any and all rights or benefits they may

now have, or in the future may have, under any law relating to the releases of

unknown claims including specifically to Section 1542 of the California Civil

Code, which provides:

> A general release does not extend to claims which the creditor or
> releasing party does not know or suspect to exist in his or her favor at
> the time of executing the release and that, if known by him or her
> would have materially affected his or her settlement with the debtor or
> released party.

Cal. Civ. Code § 1542 (2019).  Also, the Class Representatives and Class Members

with respect to the Released Claims shall waive any and all provisions, rights and

benefits conferred by any law or of any State or territory within the United States or any foreign country, or any principle of common law, which is similar, comparable or equivalent in substance to Section 1542 of the California Civil Code.

Each Class Member shall hold harmless Defendants, Defense Counsel, and the Released Parties for any claims, liabilities, attorneys' fees and expenses arising from the allocation of the Gross Settlement Amount, the Net Settlement Amount, and for all tax liability and associated penalties and interest as well as related attorneys' fees and expenses.

The Settlement Administrator shall have final authority to determine the share of the Net Settlement Amount to be allocated to each Current Participant and each Former Participant pursuant to the Plan of Allocation approved by the Court. As of the Settlement Effective Date, all Settling Parties, the Settlement Class, and each of the Plans shall be bound by the Settlement Agreement (including any amendments) and by this Final Approval Order.

## VI.    CONCLUSION

For the reasons set forth above, it is hereby **ORDERED** that:

(1)    Plaintiffs' Motion for Final Approval of Class Action Settlement [Doc. 71] is **GRANTED**.

23

(2)    Plaintiffs' Motion for Attorneys' Fees and Costs, Administrative

Expenses, and Class Representative Service Awards [Doc. 70] is

**GRANTED**.  The Court **APPROVES** the request of Class Counsel

for a fee of $1,000.000.00, litigation expenses of $17,658.77,

settlement administrative expenses of $209,532.00, and Class

Representative awards of $5,000.00 to each of the Class

Representatives.

(3)    This action is **DISMISSED WITH PREJUDICE** as to Defendants

and the members of the Settlement Class and the Court **ENTERS**

**FINAL JUDGMENT**.  The Settling Parties and Settlement

Administrator are **DIRECTED** to carry out the Settlement Agreement

according to its terms.

**IT IS SO ORDERED** this 9th day of December, 2021.

_____
MARK H. COHEN
United States District Judge